UNITED STATES of America,
Plaintiff-Appellee,

v.

Agnel JONES, Defendant-Appellant.

No. 75–1817.

United States Court of Appeals,
Sixth Circuit.

Argued Dec. 19, 1975.

Decided March 30, 1976.

On Rehearing May 7, 1976.

Eugene E. Siler, U. S. Atty., John M. Compton, Asst. U. S. Atty., Lexington, Ky., for plaintiff-appellee.

Before PHILLIPS, Chief Judge, and WEICK and ENGEL, Circuit Judges.

WEICK, Circuit Judge.

Appellant Agnel Jones was tried in the District Court and convicted by a jury upon three counts of a five-count indictment charging him with possession of a firearm as a convicted felon, in violation of 18 U.S. C.App. § 1202(a). He was sentenced to the maximum punishment of two years' imprisonment and a $10,000 fine on each count; however, the prison sentences and two of the fines were suspended, and a five-year period of probation was imposed. In this appeal he challenges his convictions, his sentences, and the denial of bail pending appeal.

We shall discuss the factual setting for each assignment of error in ruling upon that assignment.

I

### PROPRIETY OF MULTIPLE CONVICTIONS FOR SINGLE CONTINUOUS POSSESSION OF THE SAME FIREARM

In 1953 Agnel Jones was convicted of a felony, namely, for violation of federal income tax laws. He has a reputation of being a bootlegger, and over the years has been convicted thirty-seven times in the state court for possession of alcoholic beverages for resale in local option territory, a state law crime for which he paid a fine of $100 on each conviction.

On October 15, 1970 Jones purchased a .32 caliber Burgo seven-shot revolver from a friend who needed money at the time. In March 1973 Jones was stopped by police officers who were conducting a driver's license check; the officers saw this same revolver lying on the seat beside Jones, inspected the gun and recorded its serial number. In December 1973 police officers executed a search warrant looking for untaxed liquor in Jones' store. During

Dan Jack Combs, Pikeville, Ky., for defendant-appellant.

the search they asked Jones where his gun was, and he told them it was on a shelf behind the counter; they inspected the gun and recorded its serial number.

In March 1974 Jones was charged in a one-count indictment with possession of a firearm in violation of § 1202(a). In October 1974 a superseding five-count indictment was returned charging him with possession of a firearm on five separate occasions. Counts 1, 3 and 5 charged him with possession of the Burgo revolver on the three occasions described above. He was convicted on those counts and was acquitted on counts 2 and 4.

Jones contends that the multiple convictions violate the double jeopardy clause of the Fifth Amendment, and that he committed only one offense because of his continuous and uninterrupted possession of the same weapon. We agree that only one offense was committed.[1]

■ The fact that Jones now faces only one fine and only one probationary term does not render the multiple convictions harmless error. Violation of the conditions of his probation would render him liable for cumulative punishments for the several convictions. The policy of avoiding multiplicitous court proceedings dictates disposing of this issue on appeal from the convictions, rather than entertaining this question in an appeal from a motion to vacate sentence which would follow a violation of conditions of probation.

We therefore exercise our discretion under *Benton v. Maryland,* 395 U.S. 784, 791, 89 S.Ct. 2056, 2060–61, 23 L.Ed.2d 707, 714 (1969), believing that adverse collateral consequences could flow from the application of the concurrent sentence rule here, as recognized in *United States v. Febre,* 425 F.2d 107, 113 (2d Cir.), *cert. denied,* 400 U.S. 849, 91 S.Ct. 40, 27 L.Ed.2d 87 (1970).

■ The question whether a continuing offense exists is a question of statutory construction, since Congress has the power to punish different aspects of the same crime. In *United States v. Universal C.I.T. Credit Corp.,* 344 U.S. 218, 224, 73 S.Ct. 227, 230–31, 97 L.Ed. 260, 265 (1952), the Court directed its inquiry to discovering whether Congress intended to punish a particular act or a course of conduct. In examining the statute prohibiting minimum wage law violations, the Court determined that Congress intended to punish a course of conduct consisting of paying employees less than the minimum wage, rather than to punish each act of paying an employee less than the minimum wage.

While we found no federal authority either for the proposition that possession of a contraband item is a continuing offense, or for the proposition that possession of a contraband item at different times and places can constitute separate offenses, we find the reasoning in *In re Snow,* 120 U.S. 274, 281, 7 S.Ct. 556, 559, 30 L.Ed. 658, 661 (1887), to be persuasive in determining whether a continuing offense existed in the present case.

In *Snow* the defendant had followed Mormon custom in sharing marital felicity with seven wives. A federal statute prohibited cohabitation of a man with more than one woman in federal territories, including Utah, where he lived. He was charged in a three-count indictment with illegal cohabitation; each count covered a different period of time. The first count charged continuous cohabitation during 1883; the second count charged the same during 1884; and the third count charged the same for the first eleven months of 1885. The Court held that illegal cohabitation is an inherently continuing offense, and that the government could not arbitrarily divide the of-

---

1. We recognize that the question whether multiple punishments for the same offense violate the double jeopardy clause of the Fifth Amendment has never been resolved satisfactorily. *See United States v. Noble,* 155 F.2d 315, 318 (3d Cir. 1946). Some courts hold that double punishment for the same offense is illegal merely because it is not statutorily authorized, *e. g., Holiday v. Johnston,* 313 U.S. 342, 349–50, 61 S.Ct. 1015, 1017–18, 85 L.Ed. 1392, 1396–97 (1941). Other courts find a constitutional infirmity, *e. g., United States v. Benz,* 282 U.S. 304, 307, 51 S.Ct. 113, 114, 75 L.Ed. 354, 356–57 (1931).

fense into separate time periods and multiply the penalty.

It is true that in the case at bar the Government is claiming that Jones possessed the pistol on three separate occasions, not that continuous possession existed which has been broken down into arbitrary time period. With equal propriety the Government might have charged Jones with possession on more than 1100 separate days and obtained convictions to imprison Jones for the rest of his life. The fact that the Government merely has proof that he possessed the same weapon on three separate occasions, rather than continuously for a three-year period, should not dictate the result that Jones could receive three times the punishment he would face if continuous possession for a three-year period were proved. There is no proof that there was any interruption in the possession by Jones of the weapon.

■ The English case of *Crepps v. Durden,* Cowper 640 (K.B.1777), discussed in *Snow,* illustrates the principle that acts constituting a course of conduct are not punishable separately if the Legislature intends to punish the course of conduct. There a baker made and sold loaves of bread on the Sabbath in violation of a statute prohibiting the practice of one's trade on the Lord's day. He suffered four convictions, but Lord Mansfield's opinion set aside three of them, holding that regardless of how many loaves he baked or how many hours he worked, only one offense could occur on any given Sunday.

■ Possession is a course of conduct, not an act; by prohibiting possession Congress intended to punish as one offense all of the acts of dominion which demonstrate a continuing possessory interest in a firearm. If Congress had wished to punish each act of dominion it could have done so easily by forbidding the acts of dominion instead of the course of conduct. In fact, Congress did declare the possessory acts of

receiving and transporting firearms to be illegal, but Jones was not charged with performing such acts.

In the recent case of *United States v. Hairrell,* 521 F.2d 1264 (6th Cir. 1975), the defendant had been charged with possession of counterfeit bills but the jury acquitted him. He was later charged with possessing the same counterfeit bills after his acquittal. He was convicted and claimed double jeopardy on appeal. This Court held that "continued possession after acquittal constituted a new and different offense from that with which he was previously charged." *Id.* at 1266.

■ The return of an indictment charging a course of conduct prevents the relitigation of any course of conduct charged in the indictment which is tried or dismissed with prejudice and which occurred prior to the return of the indictment. However, it does not cut off the ability of the Government to charge a course of conduct subsequent to the indictment which also establishes possession of the same contraband. Thus when this Court then stated, "Defendant was convicted of possessing counterfeit currency at a different time and place in the present case from the time and place involved in the earlier charge," the factor which made the different time and place significant was the intervening indictment and adjudication.[2] *Hairrell* is thus consistent with *Snow,* which stated, "There was but a single offence [sic] committed prior to the time the indictments were found." 120 U.S. at 282, 7 S.Ct. at 559, 30 L.Ed. at 662.

■ The Government claims that this Court should apply the "same facts" test of double jeopardy, and that since the different counts require proof of possession at different times and places the offenses are separate. The correct statement of the same facts test is found in *Blockburger v. United States,* 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932), which held that an offense can be punished separately under two stat-

**2.** *United States v. Nickerson,* 211 F.2d 909, 911 (7th Cir. 1954), cited by the Government as holding that possession of illegal liquor one day apart in different states constitutes two of-

fenses, did not so hold. The court there declined to rule on that question because the defendant was serving concurrent sentences and was not prejudiced.

utes if one statute requires proof of a fact which the other does not. This rule was applied to a case, like the case at bar, where a defendant was convicted under two counts of violating the same statute, in *United States v. Noble,* 155 F.2d 315, 318 (3d Cir. 1946). There the court said:

> To determine whether the offenses are the same the test is whether each count requires proof of a fact which the others do not.

We find that test inappropriate for an offense involving a course of conduct.

In *Rayborn v. United States,* 234 F.2d 368 (6th Cir. 1956), this Court held that simultaneous transportation of two machine guns by a fugitive could constitute only one offense.

In *United States v. Kinsley,* 518 F.2d 665 (8th Cir. 1975), the court held that under the statute at issue here possession of four firearms constituted a single offense. If the Government's rule were applied the result in those cases could not be reached, since each count would include a different fact, namely, a different weapon.

A course of conduct involves a number of acts. To hold that proof of a different act under a separate count establishes a separate offense would destroy the principle that a course of conduct is punishable as only one offense.

■ Finally, we note that when an Act of Congress is ambiguous as to the allowable unit of prosecution, doubts are resolved in favor of lenity for the accused. *Bell v. United States,* 349 U.S. 81, 83, 75 S.Ct. 620, 622, 99 L.Ed. 905, 910 (1955).

■ We therefore conclude that Jones can be convicted upon only one count of possession.

## II

### VALIDITY OF THE SEARCHES AND SEIZURES

■ Jones claims that the recording of the serial number of the revolver, both at the driver's license check and during the search of his store, was illegal and violated the Fourth Amendment. This issue affects only counts 3 and 5 of the indictment. Because we have found that Jones can be convicted upon only one count of this indictment, and because the validity of the conviction upon count 1 of the indictment remains unaffected by the challenge raised here to the searches, we need not decide the question raised as to the searches and seizures.

## III

### NEXUS WITH INTERSTATE COMMERCE

■ Congress used its power under the Commerce Clause of the Constitution to enact the statute under which Jones was convicted. Thus the statute prohibits possession, receipt, or transportation of a firearm by a felon "in or affecting commerce."

Jones contends that his purchase of the revolver in Kentucky was an intrastate transaction and that there was no showing that his possession of the weapon affected interstate commerce. The evidence at the trial on this element of the crime consisted of testimony that the weapon had been manufactured in West Germany in 1968. It necessarily follows that the revolver had been transported in interstate commerce in order for it to reach Kentucky.

In *United States v. McCreary,* 455 F.2d 647 (6th Cir. 1972), the defendant was charged with possession, but not with receipt, as in the case at bar. This Court noted that while the offense of receiving may have an aspect broader than the offense of possessing, the offense of possession always implies a receipt. In subsequent cases charging both possession and receipt, this Court has stated that a showing that the gun once moved in interstate commerce established a nexus for possession as well as for receipt. *United States v. Fields,* 500 F.2d 69 (6th Cir. 1974); *United States v. Bush,* 500 F.2d 19 (6th Cir. 1974); *United States v. Day,* 476 F.2d 562, 569 (6th Cir. 1973); *United States v. Brown,* 472 F.2d 1181 (6th Cir. 1973).

Because a person possessing a firearm must necessarily have received it, the

course of conduct which Congress intended to punish is the same regardless of whether the facts charged or proven show a receipt or a possession. There is no logic in the position that a nexus sufficient to support a conviction for receipt of a firearm will not also support a conviction for possession after receipt.[3]

In this case the Government proved the facts alleged in count 1 surrounding the purchase of the weapon by Jones. The Government could have charged receipt, but instead, it charged possession; the proofs would have supported a conviction under either charge. Because the commerce nexus is jurisdictional, and because the Government clearly had the power to punish this conduct as "receiving a firearm," it follows that the power to punish this same conduct is not diminished by labeling the conduct "possessing" rather than "receiving".

We hold that when a person is charged with possession of a firearm but not with receipt of it, proof that the firearm was manufactured outside the state in which the possession occurred is sufficient to support a finding that the possession was in or affected commerce.

## IV

### DENIAL OF BAIL

■ After his conviction Jones was sentenced to the maximum terms of imprisonment under 18 U.S.C. § 4208(b), which provides that custody under that statute will be for the purpose of study to determine a proper sentence for the prisoner. The District Court ordered that Jones be sent to a medical center for federal prisoners to determine his fitness to serve a term of imprisonment. Jones immediately filed a notice of appeal from his conviction and an application for bail pending appeal, which application was denied by the District Court for the reason that he had been sent to the medical facility under § 4208(b) for study. He then applied to this Court for bail pending appeal, which was denied. He was then taken to the medical facility and examined. After his return from the medical facility the District Court suspended the prison sentences and placed him on probation.

Under the circumstances we do not believe that this appeal presents a proper situation for us to ignore the mootness of this issue in order to rule prospectively upon the merits of Jones' contention that the denial of bail was predicated upon a reason not authorized by 18 U.S.C. §§ 3146 and 3148.

## V

### CRITERIA FOR SETTING SENTENCE

In passing sentence upon Jones the District Court stated:

Mr. Jones, you have conducted illegal activities in the mountains of Eastern Kentucky for a long time. Notwithstanding the provisions of the Kentucky statutes, the authorities have seen fit on—out of your 37 convictions where a fine was paid, most of these were a violation of Kentucky laws against the possession of alcoholic beverages for resale in a local option territory. No public official has ever seen fit to use the third offense, an habitual offender statute against you to make these crimes a felony.

  .        .        .        .        .

It is the intent, Mr. Jones, of this Court to get you out of the whiskey business in the mountains.

The Court then imposed the maximum penalty on each count, but suspended two

---

3. This is made clear by the recent decision of the Supreme Court in *Barrett v. United States,* 423 U.S. 212, 96 S.Ct. 498, 46 L.Ed.2d 450, 44 U.S.L.W. 4050 (1976), affirming our opinion reported at 504 F.2d 629 (6th Cir. 1974). *Barrett* involved a prosecution under the Gun Control Act of 1968, 18 U.S.C. § 922(h), making it unlawful for a convicted felon to "receive" a firearm shipped in interstate commerce. The Supreme Court held it to apply to an intrastate receipt of such a firearm. The Supreme Court explained language in its opinion in *Tot v. United States,* 319 U.S. 463, 466, 63 S.Ct. 1241, 1244, 87 L.Ed. 1519, 1523–24 (1943), and dicta in *United States v. Bass,* 404 U.S. 336, 343 n. 10, 92 S.Ct. 515, 520, 30 L.Ed.2d 488, 494 (1971).

of the fines and all of the prison terms in view of Jones' poor health, placing Jones on probation for five years. It was the clear intent of the District Court to place a penalty of a long-term prison sentence and a $20,000 fine upon Jones if he were ever again caught possessing liquor with intent to sell in local option territory.

It is noteworthy that this offense is sufficiently petty in Kentucky that Jones has been fined $100 on thirty-seven occasions for violation of the statute, and that Kentucky officials apparently have considered Jones' conduct sufficiently innocuous that the Kentucky recidivist provision in that statute has never been invoked against him.[4]

Jones argues that the District Court is improperly using a federal statute to enforce a state statute which it normally has no jurisdiction to enforce, and that the Court has thus created its own recidivist statute, in abrogation of the apparent decision of the state of Kentucky not to use its recidivist provision against him. It is also noteworthy that the state of Kentucky has never seen fit to punish Jones to the full extent of the law as a first offender.

■ While it would have been preferable for the District Court to inform Jones at sentencing that the purpose of the sentence was to deter him from possessing a weapon rather than to deter him from selling whiskey, we can find no reversible error in the sentence or in the criteria used by the District Court in imposing the sentence. Although the discretion of a trial judge to fix a sentence within statutory limits is no longer absolute, his exercise of sentencing discretion will be set aside only for gross abuse. *United States v. Latimer,* 415 F.2d 1288, 1290 (6th Cir. 1969). A sentencing judge may properly consider prior state law violations which may show a propensity to violate the law, or which may show that the defendant does not respond

to certain types of punishment. It is clear that $100 fines do not deter Jones.

■ In view of the fact that a probationer normally faces revocation of his probation if he commits a criminal act, the Court had a duty to warn Jones that violations of local option laws would place him in jeopardy of serving his jail term for this conviction. Jones is not prejudiced in any way by being required to obey state laws for five years in order to avoid serving his prison sentence.

■ We find no evidence that the District Court was biased against the defendant; consideration of prior criminal activity in fixing a sentence is not evidence of bias.

The conviction and sentence upon count 1 of the indictment is affirmed. The convictions and sentences upon counts 3 and 5 of the indictment are reversed.

## ON REHEARING

No active Judge of this Court having requested that a vote be taken on the suggestion that the petition for rehearing be heard en banc, said petition for rehearing was considered by the panel.

It is now contended by appellant that under the "Fruit of the Poison Tree Doctrine", enunciated in *Silverthorne Lumber Co. v. United States,* 251 U.S. 385, 40 S.Ct. 182, 64 L.Ed. 319 (1920), the convictions on all counts of the indictment were invalid. We have examined again the brief in chief and the reply brief of appellant and nowhere therein does he mention this doctrine or cite the *Silverthorne* case, and we conclude that resort to it in the petition for rehearing was merely an afterthought.

In our opinion this doctrine is inapposite. In his motion to suppress, Jones did question the validity of the searches and seizures in March and December, 1973 and we thought that we had dealt adequately with them in our opinion.

---

4. Kentucky Rev.Stat. 242.990 provides that a first offender of local option laws will be fined a maximum of $100 and/or sentenced to not more than 30 days in jail; a second offender

faces a maximum penalty of $200 and 120 days in jail; a third or subsequent offender faces not less than one year nor more than two years in jail.

The March search resulted from a routine traffic check for drivers' licenses, conducted by Kentucky State Police on Kentucky Route 7 at Estill, Kentucky. Jones was in the line of public traffic passing the check point. Trooper Williamson saw, in plain view, a revolver laying on the seat beside Jones. Williamson knew Jones and believed that Jones was a convicted felon despite an incorrect report which he later received. At the officer's request Jones handed the gun to him, and he noted the serial number thereon. He believed that Jones was engaged in the commission of a crime.

The December search and seizure was conducted by Federal Special Agents of the ATF Unit, who went to search Jones' store for illicit whiskey pursuant to the authority of a search warrant. One of the agents had previously worked as an undercover agent and saw Jones carrying a gun in a holster. Upon entering the store and announcing their identification and purpose, the agents conducted a pat-down search on the person of Jones, but found no weapon. Special Agent Beam asked Jones whether he was carrying a gun and Jones replied that the only gun in the store was laying on the shelf. Jones then proceeded to the shelf, procured the gun and handed it to Beam. During his previous undercover investigation Beam had learned that Jones was a convicted felon. Beam unloaded the gun and recorded the identification data from it.

In our opinion, if there was any question about the March search and seizure the December search, conducted under the authority of the search warrant, was valid and the ATF Agents were entitled to use the fruits of that search to obtain the evidence upon which Jones was convicted on Count I.

The findings of fact adopted by the District Judge in connection with the December search are supported by substantial evidence and are not clearly erroneous.

We believe our opinion dealt adequately with the other issues raised by Jones in his petition for rehearing and they are without merit. We note Jones' disagreement with the decision of the Supreme Court in *Barrett v. United States*, 423 U.S. 212, 96 S.Ct. 498, 46 L.Ed.2d 450 (decided Jan. 13, 1976, 44 U.S.L.W. 4050). This decision is binding upon us.

The petition for rehearing is denied.