**UNITED STATES of America, Appellee,**

v.

**Ricky RUSSELL, Appellant.**

**No. 89–3048.**

United States Court of Appeals, Eighth Circuit.

Submitted June 12, 1990.

Decided July 17, 1990.

Timothy P. Leahy, St. Louis, Mo., for appellant.

David M. Rosen, St. Louis, Mo., for appellee.

Before McMILLIAN and BOWMAN, Circuit Judges, and HENLEY, Senior Circuit Judge.

McMILLIAN, Circuit Judge.

Ricky Russell appeals from a final judgment entered in the United States District Court for the Eastern District of Missouri upon his plea of guilty to the possession of 15 or more unauthorized or counterfeit access devices with the intent to defraud, in violation of 18 U.S.C. § 1029(a)(3) (1988) (Section 1029(a)(3)). The district court sentenced appellant to two years imprisonment, three years supervised release, and a $50 special assessment. For reversal, appellant contends that the district court erred in denying his motion to dismiss the indictment for failure to charge an offense under Section 1029(a)(3). Appellant argues that he never possessed 15 or more unauthorized or counterfeit access devices at one time, in this case stolen credit cards, as required by the statute. For the reasons discussed below, we reverse the judgment and remand the case with directions to dismiss the indictment and discharge appellant.

The facts leading to the indictment and conviction are undisputed. On April 16, 1987, in a transaction not charged in the indictment, appellant sold to an undercover Secret Service agent 11 stolen credit cards, ten of which had expired. On April 20, 1987, he sold the agent nine stolen credit cards and on June 22, 1987, sold the agent an additional eight stolen credit cards. On July 8, 1987, he sold the agent 12 more stolen credit cards; and on July 27, 1987, appellant sold the agent 12 more stolen credit cards. Appellant received $580 from the five sales. The one-count indictment charged appellant with possession of 41 unauthorized access devices sold between April 20, 1987, and July 27, 1987. Appellant filed a timely motion to dismiss the indictment because he never possessed 15 stolen credit cards at any one time and

that the more specific provisions of section 109(g) control in this case.

therefore, did not violate Section 1029(a)(3). Appellant's motion was referred to a United States Magistrate pursuant to 28 U.S.C. § 636(b), who recommended that the motion be denied. After *de novo* review, the district court adopted the magistrate's report and recommendation and denied appellant's motion to dismiss the indictment. Appellant subsequently pleaded guilty to Count I of the indictment and was sentenced to two years imprisonment and three years supervised release.

The sole question for decision is whether Section 1029(a)(3) requires the possession of 15 or more access devices on one occasion or in one transaction, or whether separate possessions of less than 15 credit cards in several transactions can be aggregated. Section 1029(a)(3) prohibits the knowing possession with the intent to defraud of 15 or more devices which are counterfeit or unauthorized access devices. Title 18 U.S.C. § 1029(e)(1) defines a credit card as an access device, and 18 U.S.C. § 1029(e)(3) describes an unauthorized access device as one that is "lost, stolen, expired, revoked, cancelled, or obtained with the intent to defraud."

Appellant argues that Congress enacted Section 1029(a)(3) with a minimum threshold of 15 unauthorized devices in order to concentrate federal resources on major traffickers and counterfeiters, and contends that aggregating separate possessions defeats Congress' intent to focus federal resources on major enterprises. Appellant contends that "possession" must take place at a given time and that different instances of possession over a four-month period cannot be aggregated to meet the threshold possession requirement. The government does not contend that appellant possessed 15 or more unauthorized devices at any one time or that any of the possessions leading to the sales to the agent overlapped. The government concedes that "possession" must take place at a given time, but argues that this does not limit possession to one instant in time. Citing *United States v. Woods*, 568 F.2d 509, 513 (6th Cir.) (*Woods*), *cert. denied*, 435 U.S. 972, 98 S.Ct. 1614, 56 L.Ed.2d 64 (1978), and *United States v. Jones*, 533 F.2d 1387 (6th Cir.1976) (*Jones*), *cert. denied*, 431 U.S. 964, 97 S.Ct. 2919, 53 L.Ed.2d 1059 (1977), the government argues that possession is a course of conduct, not a single act. The government contends that Congress' intent to combat major traffickers is best effectuated by allowing prosecutors to aggregate unauthorized devices possessed on different occasions to satisfy the 15 device threshold, even if the defendant did not possess 15 unauthorized devices at any one time. We find the government's aggregation argument to be unsupported by the cases it cites or by the text of 18 U.S.C. § 1029 itself.

Neither *Jones* nor *Woods* supports the government's argument that separate acts of possession can be aggregated. In each of these cases, the issue was whether a continuous course of possession could be charged as separate offenses within a period in which there was no interruption of possession. In *Jones*, the same weapon was possessed over a period of time. The government charged the defendant with possession of the same weapon on three separate occasions—once when he purchased it in 1970, again when he was stopped by a police officer during a driver's license check in March 1971, and again in December 1973 when police officers were executing a search of defendant's liquor store. 533 F.2d at 1389–90. The Sixth Circuit held that only a single offense of possession occurred because there was "no proof that there was any interruption in the possession by Jones of the weapon" from the time he first bought it in 1970 until it was seized from him in 1973. *See id.* at 1391. The court did hold that Congress intended to prohibit a course of conduct in enacting 18 U.S.C.App. § 1202(a), the statute prohibiting felons from possessing a firearm, and that possession as defined in that statute referred to a course of conduct, not an act. *See id.* However, the court also held that by prohibiting felons from possessing firearms, "Congress intended to punish as one offense all of the acts of dominion which demonstrate a *continuing possessory interest in a [single] firearm.*" *Id.* (emphasis added).

In *Woods*, narcotics agents linked the defendant to four distinct quantities of heroin—one quantity was, sold to undercover agents, two parcels of heroin were found in the trunk of the defendant's car, and one parcel was found underneath the front seat. The defendant was charged with and convicted of three separate counts of possession. 568 F.2d at 510. Relying on *Jones* and the cases cited therein, the Sixth Circuit noted that the possession was uninterrupted until the defendant's apprehension and held that the defendant should only have been convicted of one count of possession. *See id.* at 513. The court reasoned that "we see no indication that Congress intended to permit a multiplication of the offenses of possession at any given time ... upon evidence that the heroin may merely have been separately packaged or stashed." *Id.* (footnote omitted).

In the present case, in contrast to *Jones* and *Woods*, there was never an uninterrupted possession of 15 or more unauthorized devices at any point in time. Rather, appellant's alleged possession of 41 credit cards is the sum of four distinct transactions which occurred on four separate occasions between April 20, 1987, and July 27, 1987. Each period of possession ended on the date of the sale of the access devices to the government agent.[1] None of the four possessions involved 15 or more devices and each possession ended prior to the beginning of the next one. While *Woods* and *Jones* show a continuing possession, the present case shows that each possession was interrupted by a sale and the passage of a definite time interval. The *Jones* and *Woods* decisions, which hold that possession cannot be charged repeatedly unless the possession is interrupted and begun anew, actually support our holding today that separate and distinct instances of possession cannot be combined in order to meet the minimum numerical threshold of Section 1029(a)(3). *Cf. United States v. Acosta*, 763 F.2d 671, 690 (5th Cir.) (permissible to charge defendants with multiple counts of possession of marijuana when the possessions were "weeks or months apart and involved separate trips to a source location"), *cert. denied*, 474 U.S. 863, 106 S.Ct. 179, 88 L.Ed.2d 148 (1985).

Our conclusion that there can be no aggregation of separate possessions to meet the 15 device minimum in Section 1029(a)(3) is buttressed by Congress' enactment of 18 U.S.C. § 1029(a)(2). In § 1029(a)(2), Congress established a threshold above which a federal violation occurs. A violation of § 1029(a)(2) occurs only when one "knowingly and with intent to defraud" traffics in or uses one or more access devices during any one-year period and the party obtains anything of value amounting to $1000 or more during that period. Congress likewise established a threshold, the possession of 15 or more unauthorized access devices, for a violation of Section 1029(a)(3). It is curious that Section 1029(a)(3) does not mention any time period. Surely, if Congress intended separate acts of possession to be aggregated, it could have easily stated "15 or more access devices during any 6 month, 12 month or any other time period." Because no such intention was expressed, we refuse to rewrite the. statute to permit aggregation. Such a construction would contravene the legislative history of Section 1029(a)(3), which clearly states that "[t]he purpose of the numerical limitation is to concentrate Federal Government involvement on major traffickers and counterfeiters." H.R.Rep. No. 894, 98th Cong. 2d Sess. 17, *reprinted in* 1984 U.S.Code Cong. & Ad. News 3182, 3689, 3703. *See United States v. Rushdan*, 870 F.2d 1509, 1513 (9th Cir.1989).

In sum, we hold that the district court erred in denying appellant's motion to dismiss the indictment. The indictment failed to charge a violation of Section 1029(a)(3) because appellant never possessed 15 or more unauthorized access devices on any of the dates covered by the indictment. Ac-

---

1. Appellant's alleged possession of nine devices ended when he sold them on April 20, 1987; his possession of the next batch of eight devices ceased when he sold them on June 22, 1987; his possession of the next batch of 12 devices ended when he sold them on July 8, 1987; and his possession of the final batch of 12 devices ceased when he sold them on July 27, 1987.

cordingly, the judgment is reversed and the case is remanded to the district court with directions to dismiss the indictment and discharge appellant.