**UNITED STATES of America, Appellee,**

v.

**John Elmer FARKAS, Appellant.**

**No. 90–5251MN.**

United States Court of Appeals, Eighth Circuit.

Submitted Feb. 11, 1991.

Decided June 11, 1991.

Rehearing and Rehearing En Banc Denied July 31, 1991.

---

Deborah Ellis, St. Paul, Minn., for appellant.

Patricia Cangemi, Asst. U.S. Atty., Minneapolis, Minn., for appellee.

Before MAGILL, BEAM and LOKEN, Circuit Judges.

MAGILL, Circuit Judge.

John Elmer Farkas appeals his convictions for unlawful use of an access device to obtain cash in excess of $1,000, in violation of 18 U.S.C. § 1029(a)(2) (1988); and unlawful possession of fifteen or more unauthorized access devices, in violation of 18 U.S.C. § 1029(a)(3) (1988). Farkas argues that the district court[1] improperly admitted evidence that violated his sixth amendment right to confront the witnesses against him; that there was insufficient evidence to support either conviction; and that the district court abused its discretion when it ordered him to make restitution to Riverside Community Bank (Riverside) even though the jury had acquitted him of committing fraud on the bank. Because all of Farkas' claims are without merit, we affirm.

I.

Farkas owned several telemarketing businesses that were involved in this credit card scam. Farkas' companies would make unauthorized charges to consumers' credit cards and then deposit these credit slips in a merchant account at a bank. The unauthorized use of this information formed the basis for the charges against Farkas for credit card fraud. Gerovital, one of Farkas' companies, used the credit card information to make unauthorized charges of $200–300 for vitamins. The unauthorized charges were made in one of three ways:

---

1. The Honorable David S. Doty, United States District Judge for the District of Minnesota.

Farkas' employees either charged consumers for items they explicitly refused to purchase; they prematurely charged consumers who were promised a free, no-risk trial period; or they charged unsuspecting consumers without even bothering to notify them. When consumers discovered the unauthorized purchases, they usually had the charges removed from their credit cards. Many consumers wrote protest letters to Gerovital and the Better Business Bureau complaining about the unauthorized charges.

Riverside was among several banks that gave Farkas a merchant account. With a merchant account, Farkas could deposit charge slips into the account and receive immediate credit for them, allowing him to make withdrawals as if the charges were cash. When a customer demanded a chargeback, the reverse of a charge, it was deducted from the merchant account. Farkas was able to make a profit from the unauthorized charges because the delay between an unauthorized charge and a chargeback could be as long as six months. Therefore, even assuming that all of the unauthorized charges were debited from Farkas' account via a chargeback, he would still have wrongful possession of the money while the chargeback was being processed.

The president of Riverside was aware that Farkas was using the account for telemarketing businesses and was told by Farkas to expect approximately 3–5% in chargebacks. Farkas opened his account at Riverside in June 1984; by January 1985, chargebacks to Gerovital reached 20–30%. In February 1985, all business records of Gerovital and Continental Pen, another Farkas enterprise, were seized by the United States Department of Health and Human Services. In May 1985, Riverside closed Farkas' account because of excessive chargebacks and insufficient funds to cover the chargebacks.

On September 20, 1989, a federal grand jury indicted Farkas on one count of wire fraud, in violation of 18 U.S.C. § 1343, and two counts of credit card fraud, in violation

of 18 U.S.C. § 1029(a)(2) and 18 U.S.C. § 1029(a)(3). Riverside Community Bank was the alleged victim in the wire fraud charge.

In the first credit card fraud count, the government accused Farkas of "knowingly and with intent to defraud traffic[king] in or us[ing] one or more unauthorized access devices during any one-year period, and by such conduct obtain[ing] anything of value aggregating $1,000 or more during that period." 18 U.S.C. § 1029(a)(2).[2] In support of this charge, the government called witnesses who testified that Farkas' companies had made unauthorized charges whose aggregate exceeded $2,000. The government offered seventy-five complaint letters which had been seized pursuant to the February 14, 1985, search warrant. Farkas objected to the letters on the ground that they were hearsay. The judge overruled the objection and admitted them as evidence of an ongoing scheme. The judge gave the jury a limiting instruction on the letters directing the jury not to use them as substantive evidence of guilt on any of the charges.

In the second credit card fraud charge, the government accused Farkas of "knowingly and with intent to defraud possess[ing] fifteen or more devices which are counterfeit or unauthorized access devices." 18 U.S.C. § 1029(a)(3). The government used the same witness testimony and exhibits to support this charge as well.

The jury convicted Farkas on both credit card fraud charges but acquitted him on the wire fraud charge. The district court sentenced Farkas to four years' imprisonment and ordered him to pay Riverside $76,545.44 as restitution. This appeal followed.

## II.

Farkas raises three issues on appeal. First, he claims that the district court improperly admitted hearsay evidence, there-

---

**2.** The definition of "access device" includes an actual credit card, the mere credit card number or accessing PIN (personal identification number) or the recordation on paper of such information. 18 U.S.C. § 1029(e).

by violating his sixth amendment confrontation right. Second, he claims that there was insufficient evidence to support either of his credit card convictions. And third, he claims that the district court abused its discretion when it ordered him to make restitution to Riverside after the jury acquitted him of committing wire fraud on the bank.

### A. The Admission of the Seventy-five Complaint Letters

The Federal Rules of Evidence define hearsay as an out-of-court statement "offered in evidence to prove the truth of the matter asserted." Fed.R.Evid. 801(c). While the government had hoped that the letters would be admitted as evidence without restrictions, the district court admitted them for the limited purpose of providing background for the scheme and knowledge elements of the indictment. Toward this end, the district court issued a cautionary instruction to the jury stating:

> [T]hese letters are not being received for the facts contained in them. They are being received so that you can see that there was an alleged scheme or device to defraud, and it is only evidence to give you background. It is not evidence of the facts themselves.

Tr. II at 104–05.

Farkas claims that even the limited admission of letters deprived him of his sixth amendment right to confront his accusers. In *Ohio v. Roberts*, 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980), the Supreme Court stated that before hearsay evidence can be admitted, there must be a showing that the hearsay declarant is unavailable and that the hearsay statement bears adequate indicia of reliability. *Id.* at 66, 100 S.Ct. at 2539. Farkas, relying on this two-part test, argues that the admission of the letters violated his confrontation right because there was no showing of unavailability of the letters' authors and because there was no showing that the letters had the requisite indicia of reliability.

The government responds that since the letters were only admitted for the limited purpose of providing background, their admission did not violate the prohibition against hearsay evidence. The government also claims that the letters could have been admitted without restrictions under the business records exception to the hearsay rule or as admissions against interest.

Farkas' sixth amendment argument fails because it assumes, without proving, that the admission of the complaint letters violated the hearsay rule. The district court did not rule that the complaint letters were hearsay. Rather, it stated that they were "probably" hearsay and issued the limiting instruction to ensure that there would be no violation of the hearsay rule. *See United States v. Nicholson*, 815 F.2d 61, 63 (8th Cir.1987) (letters from attorney to insurance company not hearsay since they "were used to show the existence of a scheme and artifice to defraud").

■ Farkas claims that even with the cautionary instruction, the jury could not help but use the letters as substantive evidence of credit card fraud. Farkas fails to offer a persuasive reason why we should assume that the jury ignored the cautionary instruction which limited the use of the letters. Therefore, we hold that the limited admission of the letters did not violate the hearsay rule.

Without a hearsay violation, Farkas' sixth amendment claim fails. His reliance upon *Roberts* assumes a hearsay violation that raises confrontation clause questions. Because such a violation is lacking, his analysis is unpersuasive, if not irrelevant.

### B. Insufficient Evidence Claims

Farkas challenges both of his convictions on the ground that there was insufficient evidence to support them. In reviewing sufficiency claims, we must affirm convictions if there is substantial evidence to support the jury's verdict, viewing the evidence in the light most favorable to the government. *United States v. Meirovitz*, 918 F.2d 1376, 1380 (8th Cir.1990) (citing *Glasser v. United States*, 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942)).

### 1. 18 U.S.C. § 1029(a)(2) Conviction

■ Farkas first argues that, at most, the evidence at trial showed only that his telemarketing employees obtained and illegally used access devices. As Farkas was the owner of the telemarketing companies and the only person with control over the account at Riverside Community Bank, it is incredible that his attorney even attempted to argue that he was not responsible for his employees' actions. Viewing Farkas' position in the telemarketing schemes in the light most favorable to the government, it is without question that there was sufficient evidence to support Farkas' role in the crimes.

■ Farkas next argues that the evidence at trial did not establish that any access device was used to obtain a value of $1,000 or more. This argument is without merit. The indictment charged Farkas with "knowingly and with intent to defraud traffic[king] in or us[ing] *one or more* unauthorized access devices during any one-year period, ·and by such conduct obtain[ing] anything of value *aggregating* $1,000 or more during that period." 18 U.S.C. § 1029(a)(2) (emphasis added). In making his argument, Farkas ignores the statutory provisions that allow the aggregation of amounts obtained with multiple unauthorized access devices. Farkas also argues that *United States v. Russell*, 908 F.2d 405 (8th Cir.1990), supports the proposition that this court refuses to "rewrite the statute to permit aggregation." *Id.* As Farkas acknowledges, the *Russell* court made this statement with reference to § 1029(a)(3), not § 1029(a)(2). What Farkas does not acknowledge is that § 1029(a)(3) does *not* mention aggregation, while § 1029(a)(2) specifically does. Furthermore, the *Russell* court, in arriving at its conclusion not to rewrite § 1029(a)(3), noted that § 1029(a)(2) *does* include aggregation, indicating that Congress specifically excluded aggregation from § 1029(a)(3). *Id.* at 407. Consequently, we reject Farkas' claim of insufficient evidence on the § 1029(a)(2) conviction.

### 2. 18 U.S.C. § 1029(a)(3) Conviction

Farkas also claims that, as a matter of law, the government failed to produce enough evidence to support the jury's guilty verdict on his 18 U.S.C. § 1029(a)(3) charge. Farkas challenges this conviction on two grounds. First he argues that the government failed to prove that he possessed fifteen unauthorized access devices. Second, he argues that the government failed to prove that he possessed fifteen unauthorized access devices at one time.

The government argues that the evidence established that Farkas possessed twenty-eight unauthorized access devices, thereby surpassing the statutory requirement of fifteen unauthorized access devices. In addition to seventeen live witnesses, the government introduced evidence of credit card debits from expired or invalid credit cards, Ex. 27; and an abnormally high number of chargebacks in Farkas' Riverside account, Tr. V–65.

■ The district court ordered the jury to disregard four of the seventeen live witnesses because their interaction with Farkas fell outside the scope of the indictment. In addition, Farkas contends that because six of the witnesses testified that they gave their credit card numbers to his employees, he cannot be charged with unauthorized possession of their access devices. Once again Farkas' argument contradicts the plain language of the statute. Section 1029(e)(3) defines the term unauthorized access device as "any access device that is lost, stolen, expired, revoked, cancelled, or *obtained with intent to defraud*," 18 U.S.C. § 1029(e)(3) (emphasis added). All the witnesses testified that their credit cards had been used without their authorization. Thus, the evidence, viewed most favorably to the government, clearly permits the inference that these credit card numbers were "obtained with intent to defraud."

■ In sum, while we reject the government's argument that multiple uses of one credit card constitute possession of multiple unauthorized devices, and while we doubt the government's assertion that the evidence established Farkas' possession

of twenty-eight unauthorized devices, we are convinced that viewing all the evidence in the light most favorable to the government, the jury was justified in concluding that Farkas possessed at least fifteen unauthorized access devices.

■ Farkas' second argument, that there was insufficient evidence to support the jury finding that he possessed at least fifteen unauthorized access devices at one time, is also without merit. Farkas argues that this court's decision in *Russell* requires reversal. *Russell*, however, is clearly distinguishable. In *Russell*, the defendant provided a government agent with stolen credit cards on four separate occasions. The defendant never provided more than twelve credit cards at one time. This court refused to use the total of all the credit cards obtained for satisfying the § 1029(a)(3) minimum of fifteen. We noted that

> appellant's alleged possession of 41 credit cards is the sum of four distinct transactions which occurred on four separate occasions.... Each period of possession ended on the date of the sale of the access devices to the government agent. None of the four possessions involved 15 or more devices and each possession ended prior to the beginning of the next one.

*Russell*, 908 F.2d at 407 (footnote omitted). Unlike the defendant in *Russell*, Farkas did not sell the unauthorized access devices. Instead, he used them to make unauthorized charges; in some cases, he used the same credit card number several times. Therefore, his possession of the access devices was continuous. Farkas argues that we should limit our definition of "possession" to the time of the unauthorized use. This interpretation would lead to the ridiculous conclusion that in order to violate the statute, a defendant must use at least fifteen credit cards at the same moment in time. Such a reading of the statute cannot be accepted. Furthermore, since Farkas did not show that he disposed of any of the credit card numbers after his unauthorized

use, he can hardly claim that his possession ended at any specific point.

Therefore, viewing the evidence in the light most favorable to the government, Farkas' claim of insufficient evidence on the § 1029(a)(3) conviction fails.

### C. The District Court's Restitution Order

■ Farkas claims that the district court abused its discretion when it required him to make restitution to Riverside Community Bank after the jury acquitted him of committing wire fraud on the bank. In support of this claim, Farkas cites *Hughey v. United States*, —— U.S. ——, 110 S.Ct. 1979, 109 L.Ed.2d 408 (1990), where the Court held that restitution is limited to losses caused by the offense of conviction. *Id.* 110 S.Ct. at 1983–84; *see also United States v. Marsh*, 932 F.2d 710, 712 (8th Cir.1991) ("restitution is limited to the specific conduct underlying the convictions").

Farkas' reliance upon *Hughey* is unfounded. In *Hughey*, the defendant pleaded guilty to one count of credit card fraud. The district court then ordered the defendant to make restitution for other credit card frauds that the government alleged he had committed. The Supreme Court held that the defendant could only be held accountable for charges related to his conviction. *Id.* While Farkas was not convicted of wire fraud against Riverside, he was convicted of credit card fraud. While the direct victims of Farkas' credit card scheme were the consumers, Farkas also injured the bank. The consumers removed the unauthorized charges from their credit cards via chargebacks. These chargebacks came from Riverside Community Bank and cost the bank $76,545.44. Therefore, Riverside was one of the ultimate victims of Farkas' credit card scheme. Because the district court was authorized[3] to order Farkas to make restitution to Riverside as a victim of Farkas' credit card fraud convictions, we

---

**3.** Congress authorized federal courts to order convicted defendants to make restitution to the victims of their offenses in the Victim and Wit-

ness Protection Act of 1982. *United States v. Marsh*, 932 F.2d 710 (8th Cir.1991) (citing 18 U.S.C. § 3663(a) (1988)).

find no abuse of discretion in the court's restitution order.

### III.

For the foregoing reasons, Farkas' convictions and sentence are affirmed.