**UNITED STATES of America, Appellee,**

v.

**Leray Earl TAYLOR, Appellant.**

**No. 91–1383.**

United States Court of Appeals,
Eighth Circuit.

Submitted Aug. 26, 1991.

Decided Oct. 1, 1991.

Robert Malone, St. Paul, Minn., for appellant.

Andrew Dunne, Minneapolis, Minn., for appellee.

Before JOHN R. GIBSON, Circuit Judge, and HEANEY and BRIGHT, Senior Circuit Judges.

BRIGHT, Senior Circuit Judge.

Leray Earl Taylor appeals his conviction on a one-count indictment charging him with the use of an unauthorized access device in violation of 18 U.S.C. § 1029(a)(2) (1988), a statute which makes criminal the fraudulent use of credit cards or account numbers used in credit transactions. Taylor pled guilty to the charge under Fed. R.Crim.P. 11(a)(2), reserving the right to contest the applicability of the Code to the offense conduct in this case.

The sole question presented on this appeal is whether the fraudulent use of American Express account numbers, which as yet had not been assigned to any person, falls within the section 1029(a)(2) prohibition on the use of an "unauthorized access device." We answer the question in the affirmative and affirm the conviction.[1]

I. BACKGROUND

Taylor devised a "formula" for obtaining a "valid, but yet unassigned" credit card

---

1. The statute, as pertinent, reads as follows:
   (a) Whoever—
   . . . .
   (2) knowingly and with intent to defraud traffics in or uses one or more unauthorized access devices during any one-year period, and by such conduct obtains anything of val-

ue aggregating $1,000 or more during that period;

. . . .

shall, if the offense affects interstate or foreign commerce, be punished as provided in subsection (c) of this section.
18 U.S.C. § 1029(a)(2) (1988).

account number by which the defendant could make charges that would be accepted by the American Express Company. He surreptitiously gained access into the American Express computer system and tried out various number combinations until he found one that the American Express computer would accept as valid. Under this method, Taylor, using fictitious names, was able to fraudulently charge transactions to "valid, but as yet unassigned" credit card numbers.

In the present case, from June 21, 1990 through August 8, 1990, Taylor fraudulently used American Express credit card unassigned account numbers to obtain over $6,500 worth of goods and services from restaurants, hotels and limousine companies throughout the Twin Cities. In his operation the appellant, using a fictitious name, would purchase, and later redeem, gift certificates from victim merchants. Following discovery of his fraud, some of the victim merchant's employees identified Taylor sufficiently for authorities to find and arrest him.

## II. DISCUSSION

On this appeal, Taylor does not deny the facts, but contends that the use of unassigned account numbers does not come within the language of an "access device" as contemplated by the statute. The facts in this case show that appellant surreptitiously gained access into the American Express computer system. He worked out a formula by which he could obtain an unissued number, have it verified as valid, and then use it to fraudulently obtain merchandise.

The statute defines "access device" as meaning "any card, plate, code, account number, or other means of account access that can be used, alone or in conjunction with another access device, to obtain money, goods, services, or any other thing of value, or that can be used to initiate a transfer of funds." 18 U.S.C. § 1029(e)(1). 18 U.S.C. § 1029(e)(3) provides further that "the term 'unauthorized access device' means any access device that is lost, stolen,

expired, revoked, canceled, or obtained with intent to defraud."

The method used here falls within section 1029. The unauthorized use of an account number covering a valid, but unassigned account, constitutes an access device by which the fraud was perpetrated. *See United States v. Teehee*, 893 F.2d 271, 272 (10th Cir.1990); *United States v. Brewer*, 835 F.2d 550, 552–53 (5th Cir.1987).

Taylor's conduct in this case is analogous to the activity that occurred in *United States v. Brewer*. In *Brewer*, the defendant tried various number combinations until he obtained valid, but unassigned personal access codes, which he used to place unauthorized long distance phone calls. The Fifth Circuit held that the access codes were "access devices" within the meaning of section 1029. *Brewer*, 835 F.2d at 553.

Although the issue was not squarely presented to this court, in *United States v. Farkas*, 935 F.2d 962, 963–966 (8th Cir. 1991), we noted that the language of section 1029 applied to the use of telemarketing customers' credit card numbers in an unauthorized manner. The Second Circuit, in *United States v. Caputo*, 808 F.2d 963, 966 (2d Cir.1987), held that credit card account numbers obtained with intent to defraud were clearly a means of account access within the terms of section 1029.

Taylor argues that he did not employ an "unauthorized access device" because no account existed, thus, he could not access an account, and that his use of an account number, which was valid according to the American Express Company computer system, did not amount to an unauthorized use. We think the appellant cuts the statute too thinly and that the language of section 1029, "account number, or other means of account access," expressly covers the transactions made by the defendant.

## III. CONCLUSION

Accordingly, we affirm.