74 F.3d 1241
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Ronnie DAVIS; Randy Gurley; William Howell; Loretta
Pride; James Thomas; and Jerry Michael Chapman,
Defendants-Appellants.
 Nos. 94-6074 to 94-6078 and 94-6224.
 United States Court of Appeals, Sixth Circuit.
 Jan. 16, 1996.
 
 Before: BOGGS and DAUGHTREY, Circuit Judges; and MATIA,* District Judge.
 PER CURIAM.
 
 
 1
 The six defendants appeal their convictions on multiple counts of wire and mail fraud. Chapman and Pride also appeal convictions for money laundering. The court sentenced the defendants to between fifty-one (Thomas) and ninety-two (Howell) months of incarceration. Each defendant filed a timely notice of appeal. We affirm.
 
 
 2
 * The defendants were involved in a fraudulent telemarketing scheme in Memphis, Tennessee. Using a variety of organizations and names--including Cosmic Marketing (Cosmic), Promotional Development Associates (PDA), Professional Business Systems (PBS), National Business Systems (NBS), and Elite Enterprises (Elite)--the defendants collected millions of dollars from the proprietors of small businesses. The typical pitch promised a customer one of a variety of expensive prizes for taking part in a "promotion." The promotion required purchase of some simple item--usually pens, coffee mugs, or the like. The defendants hired "singers" (paid recommenders) who would reassure the customers that the organizations were legitimate, and would help convince them to buy promotional items. After receiving the customer's money, usually between $299 and $599, the defendants did not send the promised expensive prizes. Often the defendants would not even send the promotional items. Within the organizations, the defendants played various roles. Some simply worked as salespeople; others played an active role in creating and managing the organizations, and inventing increasingly clever "pitches" to fool victims.
 
 
 3
 Among them, the defendants raise eleven issues.
 
 II
 
 4
 Each defendant alleges that there was insufficient evidence to support his or her convictions. The standard of review for claims of insufficiency of the evidence is whether, after reviewing all the evidence in the light most favorable to the government, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. United States v. Nabors, 901 F.2d 1351, 1357 (6th Cir.), cert. denied, 498 U.S. 871, 111 S.Ct. 192, 112 L.Ed.2d 154 (1990). To support a conviction for wire or mail fraud, the government must prove: (1) a scheme to defraud, (2) use of mails/wires in furtherance of the scheme, and (3) specific intent to carry out the scheme. United States v. Smith, 39 F.3d 119, 121-22 (6th Cir.1994). The defendants' challenges focus on the element of specific intent. Davis, Gurley, Pride, and Thomas all allege that they were simply following the orders of Jerry Raish Chapman. They also claim that Jerry Raish Chapman told them that his lawyers approved of the organizations' scheme, arguing that they should be able to rely on the advice of his counsel. However, there is adequate evidence in each individual case from which a jury could have determined that each of these salespeople knew that he or she was making false statements as part of a scheme to defraud. At a minimum, each defendant told customers that they were guaranteed a major prize, that the "singers" were legitimate, that the company was being independently audited to ensure fair play, and that certain promotional items and gifts were expensive--all of which the defendants knew to be untrue.
 
 
 5
 Pride and Chapman allege that their convictions for money laundering were not supported by sufficient evidence. The elements of the relevant money laundering offense are that the defendant: (1) conducted a financial transaction that involved the proceeds of illegal activity, (2) knew the property involved was proceeds of illegal activity, and (3) intended to promote that illegal activity. 18 U.S.C. Sec. 1956(a)(1)(A)(i); United States v. Montoya, 945 F.2d 1068, 1075 (9th Cir.1991). Both defendants signed checks and conducted transactions with money from the illegal activities. Most of these transactions secured the inputs necessary for perpetuation of the fraud scheme (such as coffee mugs, printed material, office space, or "singers"). Because the jury heard adequate evidence from which to infer that Chapman and Pride knew that these items were being put to fraudulent uses directly related to a scheme to defraud, there was sufficient evidence for a reasonable juror to find the intent element necessary for a money laundering conviction under Sec. 1956(a)(1)(A)(i).
 
 
 6
 Howell challenges the sufficiency of evidence on a theory that the government did not actually show that he mailed letters or used the wires. His argument rests on a misunderstanding of the law of mail and wire fraud. The government does not need to demonstrate that the defendant physically put something in the mail or across the wires: it is enough that Howell reasonably foresaw that the mails and wires would be used, even by others, to accomplish his fraud. Pereira v. United States, 347 U.S. 1, 8-9, 74 S.Ct. 358, 362-63 (1954); United States v. Street, 529 F.2d 226, 228-30 (6th Cir.1976).
 
 III
 
 7
 Davis and Gurley allege that the district court erred by admitting testimony concerning two boiler room organizations not mentioned in the indictment. A district court's evidentiary rulings are reviewed for abuse of discretion. United States v. Curro, 847 F.2d 325, 328 (6th Cir.), cert. denied, 488 U.S. 843, 109 S.Ct. 116, 102 L.Ed.2d 90 (1988). Davis and Gurley focus their argument on whether the evidence was properly admitted under Fed.R.Evid. 404(b) ("Other crimes, wrongs, or acts"). The district court, however, admitted the evidence under a completely different theory: to show the scheme alleged by the government. Evidence about the other organizations, to the extent such evidence demonstrates the activities of the organizations named in the indictment, tends to prove the "crime, wrong, or act" for which the defendants were being tried. See United States v. DeClue, 899 F.2d 1465, 1472 (6th Cir.1990) (evidence of bad acts that is probative of the crime charged is not "other crimes" evidence under Rule 404(b)).
 
 IV
 
 8
 Pride alleges that the money laundering charges against her must be dismissed because the relevant section of the government's indictment mistakenly describes an important piece of evidence. The indictment against Pride mentions a check drawn on United American Bank. The check used as evidence against her at trial was actually drawn on Community First Bank. An indictment must be dismissed when a material variance prejudices the exercise of an important right by the accused. United States v. Feinman, 930 F.2d 495, 499 (6th Cir.1991); United States v. Hathaway, 798 F.2d 902, 910-12 (6th Cir.1986). However, Pride cannot show that she was surprised or prejudiced by the government's mistake. The indictment alleged the correct date, amount to the penny ($2,454.69), signatory, and purpose of the check; Pride had no accounts at the bank actually named; and the government made all of its evidence available to Pride well before trial. In the absence of prejudice or surprise, the district court did not abuse its discretion by refusing to dismiss the indictment.
 
 V
 
 9
 Gurley alleges that the district court erred in reserving judgment on his motion for acquittal on the money laundering count. The district court waited to grant this motion until after the jury returned a verdict. See Fed.R.Crim.P. 29(b) (court can reserve ruling on a motion for acquittal until after jury's verdict). We review a district court's reservation for abuse of discretion, United States v. Walton, 908 F.2d 1289, 1294 (6th Cir.), cert. denied, 498 U.S. 906, 11 S.Ct. 273, 112 L.Ed.2d 229 (1990), and will not reverse unless the defendant can show that the reservation of the ruling was prejudicial. United States v. Wininger, 427 F.2d 1128, 1129 (6th Cir.1970). Gurley is correct that the money laundering charge against him was legally insufficient. However, he cannot show how the jury's consideration of this additional count prejudiced its deliberations on the other, sufficient counts against him. We usually expect juries to follow instructions and decide multiple criminal counts accurately and independently. Since Gurley does not allege anything particularly prejudicial or confusing about the money laundering count, there is no reason to reverse the district court's reservation of its ruling.
 
 VI
 
 10
 Davis challenges the admission of out-of-court statements made by customers because he believes that these statements are hearsay. The admission of certain hearsay statements may violate the Confrontation Clause of the Sixth Amendment to the Constitution. Ohio v. Roberts, 448 U.S. 56, 63, 100 S.Ct. 2531, 2537, 65 L.Ed.2d 597 (1980). The district court ruled that the statements were offered to prove Davis's knowledge and awareness of the fraudulent activities. Cf. United States v. Rios, 842 F.2d 868 (6th Cir.), cert. denied, 488 U.S. 1031, 109 S.Ct. 840, 102 L.Ed.2d 972 (1989) (trial court's decision to admit out-of-court statements is reviewed for an abuse of discretion). The record is consistent with the district court's view of these statements. Obviously, out-of-court statements that are not offered for the truth of the matter asserted are neither hearsay nor constitutionally troublesome. United States v. Farkas, 935 F.2d 962, 965 (6th Cir.1991).
 
 
 11
 Davis also alleges that the admission of statements made by a co-defendant violates his Sixth Amendment rights as defined in Bruton v. United States, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968) (admission of the confession of a co-defendant who took the Fifth Amendment violates defendant's Sixth Amendment right to confront witnesses). A government agent testified that Howell said that he "heard salesmen making misrepresentations on a regular basis." The admission of this statement is not a Bruton violation because the use of the general terms "salesmen" and "misrepresentation" do not tend to incriminate Davis with the necessary specificity. See Vincent v. Parke, 942 F.2d 989, 991 (6th Cir.1991) (Bruton rule only applies to statements that are "powerfully incriminating").
 
 VII
 
 12
 Thomas challenges the district judge's finding that he voluntarily made certain incriminating statements to the police, and asks that we reverse the district court's decision not to suppress those statements. The standard of review for a motion to suppress is clear error as to facts and de novo as to law. United States v. Levy, 904 F.2d 1026, 1029 (6th Cir.1990). Thomas spoke to the FBI at its office during the investigation of the defendants' operations. Thomas admits that his talk with the FBI began as a noncustodial interview, but argues that it became custodial after the FBI "advised him that they had enough evidence to put him away for a long time." Thomas says that after these comments he "felt that he could not leave." Thomas stayed at the FBI office for about five hours, was never arrested, and left on his own. An examination of the record indicates that Thomas "felt like he could not leave" only because he hoped the authorities might go easier on him if he cooperated, a type of coercion against which Thomas has no constitutional protection.
 
 VIII
 
 13
 Davis, Gurley, and Howell contest the court's determination of the relevant total loss for sentencing purposes under USSG Sec. 2F1.1. The court calculated the total loss by adding up all payments by customers to the organizations for which a particular defendant worked, and prorating this amount by the amount of time the defendant spent working for the relevant organization. The defendants first argue that this method fails to adjust the total loss by the benefit that the customers received from the fraudulent transactions. Their argument fails because every expenditure by the defendants--even those that temporarily benefited a recipient--was an integral part of their ongoing, fraudulent scheme. Furthermore, it is doubtful whether any "customer" would value the junk that the defendants actually shipped. Cf. United States v. Moored, 38 F.3d 1419, 1423-29 (6th Cir.1994) (loss calculation need not be precise). We also note that Davis and Gurley stipulated to the amount of loss in pretrial proceedings.
 
 
 14
 Davis, Gurley, and Howell allege that the loss calculation is erroneous because it punishes them for losses caused by other "salespeople." The defendants cite United States v. Studley, 47 F.3d 569 (2nd Cir.1995), in which the Second Circuit held that the proper calculation of loss caused by a defendant in a similar tele-marketing scheme was the loss inflicted by the defendant's own fraudulent statements to consumers. However, the facts of Studley are different than those of the present case. Unlike the defendant in Studley, Davis, Gurley and Howell worked together: they cooperated in the development of techniques; worked in teams while deceiving people; and repeatedly re-formed new organizations with each other to avoid the authorities and confuse their victims. The defendant in Studley answered a newspaper advertisement, and worked as one of ten to twenty salespeople for a period of five weeks. He did not cooperate to design, plan, improve, or perpetuate the illegal scheme. Studley, supra, 47 F.3d at 576.
 
 IX
 
 15
 Chapman alleges that the district court's failure to explain how it calculated the amount of loss on his money laundering conviction constitutes clear error. Plain error is the relevant standard of review because Chapman failed to object adequately to the loss amount submitted by the government and adopted by the district court, $346,000. See United States v. Nagi, 947 F.2d 211, 213 (6th Cir.1991), cert. denied, 112 S.Ct. 2309 (1992) (plain error standard applies to guidelines issues waived because they were not asserted in district court). A reversal for plain factual error, as opposed to legal error, should be rare when the defendant had an opportunity to object to the facts on which the district court based its sentence. An examination of the record indicates that the district court's loss amount was determined by adding up checks signed by Chapman during his tenure at PDS (1987-1988). Chapman alleges for the first time in his brief on appeal that an unspecified portion of these checks bear a signature stamp, rather than his actual signature. He argues that he cannot be held responsible for stamped checks without additional proof. However, the enhancement of Chapman's sentence would be the same if the amount laundered was anywhere between $200,001 and $350,000, USSG Sec. 2S1.1(b)(2)(C), and the total value of the checks offered by the government was $346,000. For Chapman's argument to make a difference in his sentence, the amount of checks for which he is not responsible would have to be almost half of the total checks bearing some form of his name. In light of the vague nature of Chapman's claim, and the fact that it was not raised below, there is no sufficiently clear indication that he would be absolved of responsibility for half the checks on remand. Therefore, the district court's decision was not clearly erroneous.
 
 X
 
 16
 Davis, Gurley, Howell, Thomas, and Chapman all allege that the court clearly erred in determining their roles in the offense for the purpose of sentencing. See United States v. Akrawi, 982 F.2d 970, 973-74 (6th Cir.1993) (review for clear error). Davis and Howell argue that they were not "organizers or leaders" for purposes of the an upward adjustment under the sentencing guidelines. To determine leaders and organizers for the purposes of punishment, the sentencing guidelines instruct a court to consider factors including:
 
 
 17
 the exercise of decision making authority, the nature of participation in the commission of the offense, the recruitment of accomplices, the claimed right to a larger share of the fruits of the crime, the degree of participation in planning or organizing the offense, the nature and scope of the illegal activity, and the degree of control and authority exercised over others.
 
 
 18
 USSG Sec. 3B1.2, comment. (n. 4). The evidence clearly showed that both Davis and Howell helped start at least one of the organizations. In addition, Davis received 10% of the profit from NBS, whose office space he leased under a fictitious name. Howell, as a manager at PDA from late 1988 to 1989, helped teach and perfect one of the organization's most profitable scams.
 
 
 19
 Chapman and Thomas allege that the district court clearly erred by increasing their sentences by three levels due to their "supervisory" roles. The evidence shows that Chapman started one of the first boiler rooms, PDS, wrote its checks, hired its workers, and had a larger than average share in its total take. Thomas, whose job title was "supervisor," ran what he calls the "front room" of one of the operations. Thomas alleges that nothing illegal happened in the front room. But the front room existed only to promote the fraud occurring in the back; and it is reasonable to charge the workers in the front with some knowledge of the nature of the back room. Thomas was a supervisor in an organization pervaded by fraud; and no Chinese wall can hide him from a supervisor's responsibility. The district court's decisions to enhance the sentences of Chapman and Thomas--and Howell and Davis--were not clearly erroneous.
 
 
 20
 Gurley, Thomas, and Howell challenge the district court's failure to lower their sentences on grounds of minimal or minor participation, pursuant to USSG Sec. 3B1.2. All three were involved as "salespeople," and there is no indication that any of them were unaware of the fraudulent nature of their activities. "[T]he Guidelines require the sentencing court to make factual determinations which depend upon assessment of the broad context of the crime." United States v. Anders, 899 F.2d 570, 580 (6th Cir.), cert. denied, 498 U.S. 990, 111 S.Ct. 532, 112 L.Ed.2d 543 (1990). It was not clear error for the district court to find that Gurley, Thomas and Howell were not "less culpable than most other participants." USSG Sec. 3B1.2, comment. (n. 3).
 
 XI
 
 21
 Davis argues that the district court erred by enhancing his sentence for his leadership role pursuant to Sec. 3B1.1(a) while simultaneously enhancing his sentence pursuant to Sec. 2F1.1. Davis claims the two enhancements are "double-counting" under United States v. Romano, 970 F.2d 164, 166-67 (6th Cir.1992) (court cannot use separate guidelines to enhance sentence twice for the same reason). This exact issue was addressed in United States v. Aideyan, 11 F.3d 74, 76 (6th Cir.1993). In Aideyan, the court held that Sec. 2F1.1 gives two alternative reasons for an enhancement: more than minimal planning, or more than one victim. Increasing under Sec. 3B1.1(a) because of a management role, and increasing under Sec. 2F1.1 because of planning, would be duplicative. But Aideyan holds that increasing under Sec. 3B1.1(a) because of a management role, and under Sec. 2F1.1 because of the number of victims, is not duplicative. The latter is a defensible explanation of the district court's decision in this case.
 
 XII
 
 22
 Finally, Gurley challenges the district court's failure to depart downward because he was coerced and under duress. The district court's refusal to depart downward is not appealable if the district court properly applied the sentencing guidelines and was aware of its discretion to depart downward. United States v. Draper, 888 F.2d 1100, 1105 (6th Cir.1989). There is no indication in the record that the district court misunderstood its statutory discretion.
 
 XII
 
 23
 The district court's judgment of conviction and sentence as to each of the defendants is therefore affirmed.
 
 
 
 *
 The Honorable Paul R. Matia, United States District Judge for the Northern District of Ohio, sitting by designation