UNITED STATES of America,
Plaintiff–Appellant,

v.

Omar RUSHDAN, Defendant–Appellee.

UNITED STATES of America,
Plaintiff–Appellee,

v.

Omar RUSHDAN, Defendant–Appellant.

Nos. 87–5196, 87–5208.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Nov. 2, 1988.

Decided March 29, 1989.

David C. Scheper, Asst. U.S. Atty., Crim. Div., Los Angeles, Cal., for plaintiff U.S.

J. Brendan O'Neill, O'Neill and Young, Santa Monica, Cal., for defendant Rushdan.

Before SCHROEDER, REINHARDT and LEAVY, Circuit Judges.

LEAVY, Circuit Judge:

Omar Rushdan was found guilty of conspiracy to traffic in and possess counterfeit credits cards in violation of 18 U.S.C. § 1029(b)(2) (Supp. IV 1986) and of posses- sion of fifteen or more counterfeit credit cards in violation of 18 U.S.C. § 1029(a)(3) (Supp. IV 1986). After the verdict, the trial court granted Rushdan's motion for judgment of acquittal on the possession count holding that the evidence was insuffi- cient to show the possession affected inter- state commerce. The trial court denied Rushdan's motion for judgment of acquit- tal on the conspiracy count.

The government appeals the granting of judgment of acquittal on the possession count. Rushdan appeals denial of judg- ment of acquittal on the conspiracy count. We reverse as to the possession count and affirm as to the conspiracy count.

## FACTS

In February of 1987 Omar Rushdan, Raynard Newton, and Joseph Batie, an em- ployee of First Interstate Bank of Califor- nia, met to discuss the manufacture and use of counterfeit credit cards. Batie dis- closed that he had access to credit card numbers with high credit limits. A few days later, Batie provided a list of credit card account numbers to Newton, who gave them to Rushdan.

In March, Rushdan delivered two coun- terfeit credit cards to Newton and told him to deliver them to Charles Underwood, who was to take the cards to Detroit and obtain cash with them. Later, Underwood was stopped by surveillance agents who found an airplane ticket to Detroit and two coun- terfeit credit cards in his possession.

On the evening of March 10, 1987, New- ton telephoned Batie and arranged to meet him that night in Panorama City to pick up credit card numbers Batie obtained from the bank. During the meeting with Batie, Newton was arrested. Newton then agreed to work undercover for the Secret Service.

On March 12, Rushdan called Newton and asked whether Newton had obtained credit card numbers with high credit limits. Newton said that he had, and Rushdan arranged for them to meet later that eve- ning. Before the meeting, a Secret Service Agent gave Newton a list of fifteen credit card numbers that Newton was to give to

Rushdan and Benjamin Provo. The agent had been authorized by a First Interstate Bank Investigator to use the numbers for that purpose. Although he did not explicitly testify that the numbers were valid, the bank investigator said that the numbers on the list were First Interstate Bank credit card accounts and those bearing the prefix "417825" belonged to out of state accounts. At the meeting, Newton gave Rushdan and Provo a list of fifteen credit card account numbers. Rushdan asked if the account numbers were for VISA cards and inquired whether Newton could obtain some Master-Cards. Rushdan also commented on the high credit limits.

Rushdan and Provo were arrested after the meeting. Provo was searched, and the list of fifteen unauthorized credit card numbers was found. The account numbers on the list were for existing accounts at First Interstate Bank of California. Six were the numbers of cardholders who resided outside of California.

The indictment charged Rushdan, Newton, Batie, and Provo with conspiracy to commit credit card fraud in violation of 18 U.S.C. § 1029(b)(2). Rushdan and Provo were also charged with possession of unauthorized access devices in violation of 18 U.S.C. § 1029(a)(3). Newton, Batie, and Provo pleaded guilty.

At the close of the government's case, Rushdan moved for a judgment of acquittal on both the conspiracy and possession counts. The trial court denied the motion without prejudice as to the conspiracy count, but indicated that it would reserve ruling on the motion as to the possession count. Rushdan presented no evidence, and both counts were submitted to the jury. After the verdict against him on both counts, Rushdan renewed his motion for judgment of acquittal as to the posses-

sion count. The district court granted the motion and dismissed the possession count on the ground that the evidence was insufficient to establish that Rushdan's actions affected interstate commerce as required by 18 U.S.C. § 1029(a)(3). Rushdan was sentenced to four years on the conspiracy count.

## DISCUSSION

### I. Conspiracy Count

Rushdan was convicted under 18 U.S.C. § 1029(b)(2), which prohibits conspiracy to violate section 1029(a). Title 18 U.S.C. § 1029(a) covers fraud or related activity in connection with unauthorized access devices "if such offense affects interstate commerce."

Rushdan contends that the trial court erred in denying his motion for judgment of acquittal on the conspiracy count. He argues that the evidence was insufficient to show that the conspiracy affected interstate commerce. Rushdan argues that no goods were purchased with counterfeit bank cards with out of state numbers and that the out of state numbers were supplied by the bank investigator under controlled conditions, and thus there was no possibility Rushdan could use the numbers in a manner affecting interstate commerce. Rushdan's argument lacks merit.[1]

Conviction for conspiracy to violate a law with an interstate commerce element does not require that the conspiracy itself actually affect interstate commerce. In *United States v. Brooklier*, 685 F.2d 1208, 1217 (9th Cir.1982), *cert. denied*, 459 U.S. 1206, 103 S.Ct. 1194, 75 L.Ed.2d 439 (1983), we rejected the defendants' argument that an actual potential effect on interstate commerce is a jurisdictional prerequisite for a

---

1. The government argues that Rushdan's failure to renew his motion for judgment of acquittal on the conspiracy count waives the objection to the sufficiency of the government's evidence. *See United States v. Comerford*, 857 F.2d 1323 (9th Cir.1988) (per curiam). However, where a defendant offers no evidence after he has moved for judgment of acquittal, he is not required to renew his motion to preserve his right to challenge the sufficiency of the evidence. 2 C. Wright, *Federal Practice and Procedure*, Crim-

inal 2d § 463, at 642 & n. 2 (2d ed. 1982); *cf. United States v. Patton*, 771 F.2d 1240, 1243 (9th Cir.1985) ("If a defendant moves for acquittal at the close of the government's evidence, *and then presents his own evidence* but does not renew the motion for acquittal, he waives the benefit of the motion.") (emphasis added). Rushdan did not introduce further evidence after the court denied his motion; thus, he did not waive his right to challenge the sufficiency of the evidence.

conviction of conspiracy to extort in violation of the Hobbs Act, 18 U.S.C. § 1951, which, like section 1029, requires an effect on interstate commerce. In *United States v. Bagnariol*, 665 F.2d 877, 894 (9th Cir. 1981), *cert. denied*, 456 U.S. 962, 102 S.Ct. 2040, 72 L.Ed.2d 487 (1982), we discussed the interstate commerce requirement as applied to a Hobbs Act extortion attempt and concluded that "[i]t is enough that the scheme, if successful, would have affected commerce." In *United States v. De Biasi*, 712 F.2d 785, 790 (2d Cir.), *cert. denied*, 464 U.S. 962, 104 S.Ct. 397, 78 L.Ed.2d 339 (1983), the Second Circuit explained that conspiracy to violate 15 U.S.C. § 1644 by fraudulent use of credit cards does not require that defendant specifically intends to use the card in transaction affecting interstate commerce or that the cards be used, because "it is the *agreement* that particular ... cards would ultimately be used in transactions affecting interstate commerce ... that gives rise to a sufficient threat to interstate transactions as to trigger federal jurisdiction." (emphasis added). These cases demonstrate that an inchoate crime such as conspiracy need not actually affect interstate commerce to satisfy the interstate commerce element of a statute such as section 1029.

■ Rushdan does not dispute the evidence that he had possession of numbers of out of state accounts he and his codefendants intended to use. Such evidence was sufficient to establish a conspiracy to violate 18 U.S.C. § 1029(a).

■ Rushdan also contends that his conviction should be reversed because the jury instructions misstated the elements of the conspiracy charge. He argues that the instructions as given improperly allowed the jury to convict him without first determining that the offense affected interstate commerce as required by 18 U.S.C.

§ 1029(b)(2). He took no exception to the instructions.

Since Rushdan failed to take exception to the jury instructions at trial, we review his challenge to them on appeal for plain error. We cannot reverse for plain error absent a showing of prejudice. *United States v. Bustillo*, 789 F.2d 1364, 1367 (9th Cir.1986). Although the conspiracy instruction should have included a reference to interstate commerce in describing the object of the conspiracy, there was no prejudice because Rushdan was convicted of the substantive crime as well.

## II. Possession Count

■ The government contends the district court erred in granting Rushdan's motion for judgment of acquittal on the possession count. The district court granted the motion on the ground that Rushdan's possession of out of state account numbers could have no effect on interstate commerce because the account numbers were supplied by an undercover agent and Rushdan had no opportunity to use them. The correctness of the district court's ruling turns on interpretation of section 1029's interstate commerce requirement. Our review of the statute, its legislative history, and cases decided under section 1029 and similar statutes lead us to conclude that the district court erred.[2]

Title 18, section 1029(a) provides in relevant part that

(a) Whoever—

(1) knowingly and with intent to defraud produces, uses, or traffics in one or more counterfeit access devices;

(2) knowingly and with intent to defraud traffics in or uses one or more unauthorized access devices during any one-year period, and by such conduct ob-

---

**2.** Rushdan contends that the trial court committed reversible error by reserving its ruling on the motion for judgment of acquittal as to the possession count. While it is mandatory under rule 29(a) "that a motion for judgment of acquittal, made at the close of the Government's evidence, be ruled upon before [a] defendant is required to proceed with his evidence," *United States v. Dreitzler*, 577 F.2d 539, 552 (9th Cir.

1978) (citations omitted), we will not reverse absent prejudice. *Id.* There is no prejudice if the government's evidence at the time of the motion is sufficient to support the jury verdict. *Id.* Since the government's evidence on the possession count satisfied the requirement of "affecting interstate commerce," the reservation of ruling was harmless error.

tains anything of value aggregating $1,000 or more during that period;

(3) knowingly and with intent to defraud possesses fifteen or more devices which are counterfeit or unauthorized access devices; or

(4) knowingly, and with intent to defraud, produces, traffics in, has control or custody of, or possesses device-making equipment; shall, if the offense affects interstate or foreign commerce, be punished as provided in subsection (c) of this section.

Possession of a counterfeit credit card without use is sufficient to constitute a violation. It is also clear that possession does not constitute a violation unless the possession "affects interstate commerce." House Report No. 894 shows why this language was adopted:

In using the phrase "affect interstate or foreign commerce" the Committee intends to establish a broad jurisdictional basis. The provision is intended to provide Federal prosecutors with a means to prosecute effectively a broad variety of credit card and account-related fraud schemes. Nevertheless, certain thresholds ... such as the dollar amount threshold on trafficking ... and the possession of 15 or more ... counterfeit devices, will insure that Federal involvement is concentrated on those situations where they can best supplement the efforts of State and local governments.

H.R.Rep. No. 894, 98th Cong., 2d Sess. 16, *reprinted in* 1984 U.S.Code Cong. & Admin.News 3182, 3689, 3702. The House Report explains that

[s]ection 1029(a)(3) provides a separate offense for possession of 15 or more counterfeit or unauthorized access devices with intent to defraud. The purpose of the numerical limitation is to concentrate Federal Government involvement on major traffickers and counterfeiters and to authorize such involvement *even in cases where producing, trafficking in or using such access devices cannot be established.*

*Id.* at 17, *reprinted in* 1984 U.S.Code Cong. & Admin.News at 3703 (emphasis added).

Rushdan contends that the statute embodies Congress' desire to place a substantial limitation on federal jurisdiction over credit card offenses. The legislative history of section 1029 does not support Rushdan's view. There is no evidence that Congress was concerned about an overly broad exercise of jurisdiction; rather, the sections of the House Report quoted suggest that Congress wanted to establish a broad jurisdictional base for prosecution of credit card offenses that were large enough to meet the specified thresholds as to dollar amount or number of access devices possessed.

Cases under section 1029 and 15 U.S.C. § 1644, which prohibits fraudulent use affecting interstate commerce of legitimate credit cards, have not interpreted the interstate commerce requirement in situations similar to Rushdan's, but have interpreted the requirement in cases dealing with use of a counterfeit or fraudulently obtained credit card, rather than with possession of such credit cards. *See, e.g., United States v. Lee,* 818 F.2d 302, 305 (4th Cir.1987) (interstate telephone call by a bank manager triggered by defendant's attempt to use credit card sufficient to establish interstate commerce under § 1029); *United States v. Helgesen,* 513 F.Supp. 209, 218 (E.D.N.Y. 1981) (transaction affected interstate commerce as required by 15 U.S.C. § 1644 when defendant used stolen credit card to obtain payments from federally insured bank).

The government cites *United States v. Bagnariol,* 665 F.2d at 894, as authority for the proposition that the "effect on interstate commerce requirement" is satisfied if "the scheme, if successful, would have affected commerce." *Bagnariol* and the cases it cites deal with convictions of attempt or conspiracy to obstruct interstate commerce in violation of the Hobbs Act. *Id.* at 894–895; (citing *United States v. Zemek,* 634 F.2d 1159, 1173 n. 20 (9th Cir. 1980) (actual effect on interstate commerce not required for Hobbs Act attempt conviction), *cert. denied,* 450 U.S. 916, 101 S.Ct. 1359, 67 L.Ed.2d 341 (1981); *United States v. Phillips,* 577 F.2d 495, 500–01 (9th Cir.) (actual effect on interstate commerce not required for Hobbs Act conspiracy convic-

tion), *cert. denied*, 439 U.S. 831, 99 S.Ct. 107, 58 L.Ed.2d 125 (1978)). *See also Brooklier*, 685 F.2d at 1217 (actual potential effect on interstate commerce not required for Hobbs Act conspiracy). Although these cases deal with attempt or conspiracy, they do provide indirect support for the government's contention that no actual or actual potential effect on interstate commerce is required for the offense of possession.[3]

The legislative history of section 1029 shows that Congress intended a broad jurisdictional base for federal prosecution of counterfeit credit card crimes. We believe that possession of the numbers of out of state credit card accounts is an act clearly within the intended scope of federal jurisdiction and hold that, consistent with Congressional intent and with cases decided under the Hobbs Act, illicit possession of out of state credit card account numbers is an "offense affect[ing] interstate or foreign commerce" under 18 U.S.C. § 1029(a).

## CONCLUSION

The district court's denial of the motion for judgment of acquittal on the conspiracy count is affirmed; its grant of a judgment of acquittal on the possession count is reversed. We remand to the district court for sentencing on the possession count.

---

[3.] Cases under the statutes penalizing possession of a gun by a felon provide support for the government's position. In *Scarborough v. United States,* 431 U.S. 563, 97 S.Ct. 1963, 52 L.Ed.2d 582 (1977), the Supreme Court analyzed the interstate commerce requirement of former 18 U.S.C. app. § 1202(a)(1) and held that the government could meet its burden of proving a felon possessed a firearm "in commerce or affecting commerce" by demonstrating that the firearm had previously traveled in interstate commerce, before receipt or possession by the felon. *Id.* at 564, 575 n. 11, 97 S.Ct. at 1964, 1969 n. 11. *Accord, United States v. Lancellotti,* 761 F.2d 1363, 1367–68 (9th Cir.1985). In *United States v. Sherbondy,* 865 F.2d 996 (9th Cir. 1988), we analyzed the interstate commerce requirement of 18 U.S.C. § 922(g), which replaced

section 1202(a)(1), and held that the requirement "to possess in or affecting commerce" required no present nexus with interstate commerce, but that "the government need only prove that the gun had at one time crossed state lines." *Id.* at 998. These cases, like those treated above, lead us to conclude that section 1029 does not require a present nexus with interstate commerce; it is enough that Rushdan had possession of out of state account numbers.