133 F.3d 930
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Anthony SHOWA, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Arthur Roland ELLIS, Defendant-Appellant.
 Nos. 96-50698, 97-50017.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Nov. 7, 1997.
Decided Dec. 19, 1997.
 
 1
 BEFORE: CANBY and THOMPSON, Circuit Judges, and MOLLOY,[2] District Judge
 
 MEMORANDUM[1]
 
 2
 Arthur Ellis and Anthony Showa were indicted on charges of wire fraud and conspiracy to commit wire fraud stemming from their operation of the National Promotional Clearance Center ("NPCC"), a telemarketing company. A jury found them guilty on August 15, 1996.
 
 
 3
 They now claim error in the district court's refusal to grant a new trial for juror misconduct. Both appeal their sentences on the grounds that (a) the district court erred in calculating the monetary loss for sentencing purposes; (b) the district court erred in applying the adjustment for role in the offense; and, (c) the district court erred in applying the adjustment for targeting vulnerable victims.
 
 
 4
 Additionally, ElLis claims the district court's refusal to grant his motion for severance was wrong. For his part, Showa argues that the evidence was not sufficient to support the verdict and that. certain customer complaint. letters received by NPCC are inadmissible hearsay.
 
 
 5
 The facts are well known to the parties and we will only recite them here as required for purposes of discussion.
 
 I. Juror Misconduct
 A.
 
 6
 During deliberations on August 15, 1996, the jury foreperson sent out a note stating that one of the jurors, Emma Whitley, had admitted to. conducting independent research on the internet about telemarketing. The district court judge questioned Ms. Whitley on the extent of her research. Ms. Whitley responded that she had typed in the search term "telemarketing" in an effort to find out what the term meant. The judge also asked whether Ms. Whitley had been influenced in any way by what she had seen. The juror said the search yielded only general information, that it had not been negative, and that she had seen nothing that would influence her vote. The judge admonished her not to discuss what she had seen and not to consider it in arriving at her verdict.
 
 
 7
 The district court judge later interviewed each juror. Some jurors responded that they had heard nothing. Others said that the information was insignificant. It would not affect their verdict. Defense counsel moved for a mistrial and that was denied. Deliberations continued and the jury returned a verdict of guilty the same day.
 
 
 8
 Ellis and Showa both filed motions for a new trial on November 4, 1996. The underlying premise of the motions was "newly discovered evidence" regarding the research that Juror Whitley had conducted, Ellis' counsel's investigator interviewed Whitley He reported that in addition to the internet access, she had also used the San Diego Union Tribune newspaper to conduct research. Showa's counsel's investigator attempted to simulate the internet research conducted by Whitley. The ninth "hit" among the first ten articles retrieved was entitled "10 Plead Guilty to Fraud in Widespread Telemarketing Scam."
 
 
 9
 The district court accepted the government's argument and ruled that the motions were untimely. The trial judge found that even if the evidence presented in favor of a new trial was newly discovered, it was not prejudicial.
 
 B.
 
 10
 Rule 33 of the Federal Rules of Criminal Procedure states:
 
 
 11
 A notion for a new trial based on the ground of newly discovered evidence may be made only before or within two years after final judgment.... A motion for a new trial based on any other grounds shall be made within 7 days after verdict or finding of guilty or within such further time as the court may fix during the 7-day period.
 
 
 12
 Id. The timeliness of appellants, motion for new trial thus hinges on whether the evidence of juror misconduct was "newly discovered evidence."
 
 
 13
 The answer to this question is controlled by United States v. McKinney, 952 F.2d 333 (9th Cir.1991).
 
 
 14
 In McKinney, the court declined to reach the issue of juror misconduct. Instead,it held that McKinney did not timely bring his motion for a new trial. Rule 33, Id. at 336. When the motion for a new trial is brought beyond the seven days allowed by the rule, new evidence is required to sustain it. Id.
 
 
 15
 Even so, "[e]vidence known oz discovered before the trial is over is not newly discovered." Id. Furthermore,
 
 
 16
 [A] trial is not over until the verdict is received and the defendant has either been acquitted or convicted. Until then, and until the jurors have formally assented to the verdict and been excused, the trial is not completed. Court and counsel still have an opportunity to do something about newly discovered evidence, and correspondingly, the obligation to act on it. The proceedings are still part of the trial, and no new trial is required to remedy the wrong.
 
 
 17
 Id. at 335-36.
 
 
 18
 Juror Whitley's conduct was known before conclusion of trial. It does not amount to "newly-discovered evidence." A motion for new trial should have been brought within 7 days of the verdict. Alternatively, counsel could have requested the court to extend that period if such request was made within 7 days.
 
 
 19
 Since no "newly discovered evidence" was presented to trigger the two-year period, the motions for new trial were untimely. Accordingly, we affirm the district court's denial of the motions for a new trial.
 
 II. Sentencing Issues
 A. Calculation of Monetary Loss
 
 20
 Findings of fact used to calculate monetary loss to victims are reviewed for clear error. United States v. Clayton, 108 F.3d 1114, 1118 (9th Cir.1997). Such findings must be based on a preponderance of the evidence. Id.
 
 
 21
 Showa and Ellis take issue with the district court's calculation of the amount of loss involved in the offense for the purpose of applying USSG § 2F1.l(b) (1 The district court adopted the calculations set forth in the government's sentencing memorandum. The calculations are based on the testimony of Carol Harmon, a financial analyst with the FBI. Her calculations showed that from March 1992 to January 1993 a total of $3,251,883 was deposited into NPCC accounts controlled by Ellis and Showa. Of that, $2,580,854 was expended by Ellis and Showa. The amount sent to victims in the form of refunds was subtracted from expenditures to yield a total loss of $2,161,251.
 
 
 22
 The loss induced by the fraud need not be determined with precision. It need only be reasonably estimated given the available information. USSG § 2F1.1, Application Note 8. "This estimate ... may be based on ... the nature and duration of the fraud and the revenues generated by similar operations." Id. Measured against this standard, the district court's reliance on the loss calculations produced by the FBI analyst was reasonable. Accord United States v. Amlani, 111 F.3d 705, 719 (9th Cir.1997) (upholding loss calculation based on total amount of revenue generated by telemarketing fraud)
 
 
 23
 However, Showa argues that to accept those calculations is to infer that all NPCC's revenues were tainted by fraud. He states that "[t]o calculate the amount of loss by inference is absolutely inappropriate." The argument is unavailing. Calculation by inference can be appropriate depending on the information available. See Clayton, 1108 F.3d at 1118-19 (district court entitled to infer that Clayton was responsible for the loss associated with other stolen telephone numbers found in his possession).
 
 
 24
 Therefore, we affirm the district court's loss calculations in applying USSG § 2F1.1.
 
 B. Adjustment for Role in the Offense
 
 25
 The district court added two points to Showa's base offense level and four points to Ellis' base offense level for their roles as organizers and leaders in the offense. Showa argues that the evidence does not support a role-in-the-offense adjustment in his case. Ellis argues that the most he should receive is a three point increase.
 
 
 26
 A district court's determination that a defendant's role in the offense as a leader or organizer warrants the application of USSG § 3B1.1 is reviewed for clear error. United States v. Ponce, 51 F.3d 820, 826 (9th Cir.1995). In determining that a defendant was an organizer or leader, as opposed to a manager or supervisor, a court should consider: "the exercise of decision making authority, the nature of the offense and the defendant's participation in the offense, the recruitment of accomplices, the claimed right to a larger share of the fruits of the crime, and the degree of control and authority exercised over others." Id. at 827 (citing U.S.S.G. § 3B1.1, Application Note 4).
 
 
 27
 Ellis' four level enhancement is; warranted if his leadership role in the criminal activity "involved five or more participants or was otherwise extensive." U.S.S.G. § 3B1.1(a). NPCC was an extensive telemarketing operation employing over 100 people at one time. Ellis ran the day-to-day operations. He was involved in the hiring of the telephone solicitors, and he provided the "pitches" used in the scam. While Showa may have been less culpable than Ellis, he still participated in organizing and running NPCC. Ellis and Showa together shared the bulk of the fruits of the crime.
 
 
 28
 Under.these circumstances, there was no error in the district court's determination that Ellis and Showa were leaders and organizers in the criminal venture.
 
 
 29
 C. Adjustment for Targeting Vulnerable Victims
 
 
 30
 This Court "reviews de novo the district court's 'application of the Sentencing Guidelines,' but 'findings of fact under them for clear error.' " United States v. O'Brien, 50 F.3d 751, 754 (9th Cir.1995).
 
 U.S.S.G. § 3A1.1(b) provides, that:
 
 31
 If the defendant knew or should have known that a victim of the offense was unusually vulnerable due to age, physical or mental condition, or that a victim was otherwise particularly susceptible to the criminal conduct, increase by 2 levels.
 
 
 32
 Id. It is not necessary for the defendant specifically to target a vulnerable victim for § 3A1.1(b) to apply. Actual or constructive knowledge that vulnerable victims do not get what they were promised is enough to trigger the adjustment. O'Brien, 50 F.3d at 756.
 
 
 33
 The victims described in the presentence reports are elderly, a vulnerable category under the guideline. Letters of complaint from elderly victims, in which they stated their age, are evidence that the defendants were on notice of the age and vulnerability of their victims. Accord O'Brien, 150 F 3d at 756 (upholding vulnerable victim adjustment because appellants should have known that "many vulnerable victims were, not getting their claims paid, and yet appellants continued to accept [health care] premiums from them").
 
 
 34
 Accordingly, we affirm the district court's imposition of the vulnerable victim adjustment.
 
 III. Notion for Severance
 
 35
 Ellis argues that the district court erred in failing to sever his trial from that of co-defendant Showa because Showa presented a defense antagonistic to his own.
 
 
 36
 The decision whether to sever is reviewed for an abuse of discretion. United States v. Atcheson, 94 F.3d 1237, 1244 (9th Cir.1996). A defendant bears the burden of proving that the prejudice he or she suffered from the joint trial was so "clear, manifest or undue" that he or she was denied a fair trial. United States v. Throckmorton, 87 F.3d 1069, 1071-72 (9th Cir.1996).
 
 
 37
 Ellis claims that severance was warranted because Showa's counsel during cross-examination, attempted to paint Ellis as the person in control of operations. Ellis relies on United States v. Tootick, 952 F.2d 1078 (9th Cir.1991) but that case is inapposite here. In Tootick, the defendants presented mutually exclusive defenses against an assault charge--each claimed the other stabbed the victim. Id. at 1081. In that, situation "prejudice will exist if the jury is unable to assess the guilt or innocence of each defendant on an individual and independent basis." Id. at 1082.
 
 
 38
 Here, Ellis and Showa's defenses were not mutually exclusive. Both denied culpability. If the jury believed Showa, it was not obliged to find Ellis guilty and vice versa. Showa may have attempted to push more blame in Ellis direction but that is not sufficient to compel severance. See United States v. Gonzalez, 749 F.2d 1329, 1333 (9th Cir.1984) (noting that antagonism between defenses is not enough to compel severance, even where defendants seek to blame one another, unless "the defenses are 'antagonistic to the point of being mutually exclusive' ").
 
 
 39
 Accordingly, we affirm the district court's denial of Ellis' Motion to Sever.
 
 IV. Hearsay
 
 40
 Whether the district court correctly construed the hearsay rule is a question of law reviewed de novo. United States v. Collicott, 92 F.3d 973, 978 (9th Cir.1996). The decision to admit evidence under exceptions to the hearsay rule is reviewed for an abuse of discretion. Id. at 978.
 
 
 41
 Showa proposes that the customer letters proffered by the government were inadmissible hearsay. He suggests the letters were relevant only for the truth of the matter asserted, and for no other purpose.
 
 
 42
 However, the district court made it clear to the jury by cautionary instruction that the letters were to be considered only for the Limited purpose of showing that the defendants were on notice of complaints about NPCC. Thus, there was no violation of the hearsay rule.
 
 V. Insufficiency of the Evidence
 
 43
 A conviction is supported by sufficient evidence if "any rational trier of fact could have found the elements of the crime beyond a reasonable doubt." United States v. Sarno, 73 F.3d 1470, 1494 (1995). Evidence is viewed in the light most favorable to the government; all reasonable inferences which may be drawn from the evidence inure to the government's favor. Id.
 
 
 44
 Showa asserts that the evidence was insufficient to support the verdict against him because "his involvement in the conspiracy and scheme to defraud was insufficiently demonstrated at trial." However, he does not identify any specific element of the crime charged that the government failed to prove.
 
 
 45
 Showa was a co-owner of NPCC. He was involved in the discuss:.ons about moving the telemarketing operation from Pennsylvania to California. Showa was apprised of the backgrounds and experience of the salespersons who were to be employed in California, and he had knowledge of the sales pitches they would be using. He listened to those pitches being made by certain of his salespeople. He was aware of complaints made against the company and took no action to rectify the situation.
 
 
 46
 This is sufficient evidence for a rational trier of fact to find Showa guilty. Compare Peters, 962 F.2d 1410, 1414 (9th Cir.1992) (Evidence sufficient because jury was entitled to infer that Linda Peters was actively involved in the fraudulent credit card scheme since she had personal knowledge of numerous complaints and continued to help in the operation). Accordingly, we affirm the verdict of guilty.
 
 AFFIRMED
 
 
 [2]
 The Honorable Donald W. Molloy, United States District Judge for the District of Montana, sitting by designation
 
 
 [1]
 This disposition is not appropriate for publication and may not be c:.ted to or by the courts of this circuit except as provided by 9th Cir. R 36-3