145 F.3d 1340
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
The PEOPLE OF THE TERRITORY OF GUAM, Plaintiff-Appellee,
v.
John Junior PANGELINAN, Defendant-Appellant,
 No. 96-10459.
D.C. No. CR-95-00139A.
 United States Court of Appeals, Ninth Circuit.
 May 5, 1998.
Argued and Submitted November 4, 1997.
 
 Appeal from the United States District Court for the District of Guam, John S. Unpingco, District Judge, Presiding.
 Before REINHARDT, LEAVY and THOMAS, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 John Junior Pangelinan appeals the decision of the Appellate Division of the District Court of Guam affirming his jury conviction of murder, possession or use of a deadly weapon in the commission of murder, burglary, theft, hindering apprehension or prosecution of murder, possession of a controlled substance, theft by receiving, and possession of a firearm without an identification card. We review the Appellate Division's decision de novo, see Camacho v. Du Sung Corp., 121 F.3d 1315, 1316 (9th Cir.1997), and affirm. Because the parties are familiar with the factual and procedural history of this case, we will not recount it here.
 
 I.
 
 3
 The trial court did not abuse its discretion, see United States v. Jackson, 84 F.3d 1154, 1158 (9th Cir.), cert. denied, --- U.S. ----, 117 S.Ct. 445, 136 L.Ed.2d 341 (1996), in admitting evidence of Pangelinan's drug use, possession, and trading. Under Guam law, such evidence is admissible to prove "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." 6 Guam Code Ann. § 404(b) (1996). Contrary to Pangelinan's assertions, the trial court properly admitted evidence of his previous drug use, possession, and trading as proof of material elements of his currently charged crimes: his motive for inducing or aiding homicide, robbery, burglary, and theft, see United States v. Bradshaw, 690 F.2d 704, 708-09 (9th Cir.1982) (concluding that although motive was not element of kidnapping charge, motive "is evidence of the commission of any crime"; finding that trial court did not err in admitting evidence of defendant's drug use and sexual relations with nine-year-old victim as proof of defendant's motive for kidnapping); and his intent to deliver or dispense a controlled substance that he possessed, see United States v. Hegwood, 977 F.2d 492, 497 (9th Cir.1992) ("We have consistently held that evidence of prior possession or sale of cocaine is relevant under Rule 404(b) to issues of intent ... in a prosecution for possession of and intent to distribute narcotics.") (citation and internal quotation marks omitted). Because the potential prejudicial impact of the evidence of Pangelinan's previous crimes did not outweigh its probative value, see United States v. Hadley, 918 F.2d 848, 851 (9th Cir.1990), the trial court did not abuse its discretion in admitting this evidence.
 
 II.
 
 4
 The trial court properly admitted alleged hearsay testimony about the declaration of Mark Angoco that Pangelinan had furnished the weapon for the murder of Darwin Datuin. Under Guam law, as under Federal Rule of Evidence 801(d)(2)(E), "[a] statement is not hearsay if ... [t]he statement is offered against a party and is ... a statement by a co-conspirator of a party during the course and in furtherance of the conspiracy." 6 Guam Code Ann. § 801(d)(2)(E) (1996). The government of Guam made the necessary threshold showing that a conspiracy involving Pangelinan existed. Pangelinan's association with Angoco, his connection to the murder weapon, and his access to the fruits of the crime all established the existence of a conspiracy and Pangelinan's connection to that conspiracy by a preponderance of the evidence. See Bourjaily v. United States, 483 U.S. 171, 175-76, 178-81, 107 S.Ct. 2775, 97 L.Ed.2d 144 (1987) (requiring party offering hearsay statements of co-conspirator to prove by preponderance of evidence, including hearsay statements themselves, that conspiracy existed and that defendant was involved in it). The Government also demonstrated that there was a single conspiracy, since there was "one overall agreement" between Pangelinan and Angoco to perform different functions to accomplish the same goal: the murder of Datuin. See United States v. Arbelaez, 719 F.2d 1453, 1457 (9th Cir.1983). Finally, Angoco unmistakably uttered his declaration to Paul Tedtaotao that Pangelinan would supply weapons in furtherance of the conspiracy to kill Datuin, because Angoco intended to draw Tedtaotao into the conspiracy by emphasizing Tedtaotao's minimal burdens as a member of the criminal venture. See United States v. Crespo de Llano, 838 F.2d 1006, 1017 (9th Cir.1987). Hence, the trial court properly admitted Angoco's hearsay statements.
 
 III.
 
 5
 We review de novo the trial court's decision to close the hearing on Ricky McIntosh's motion for sentence reduction (the "Hearing") and to seal the record of the Hearing, as a potential violation of Pangelinan's Sixth Amendment rights and his due process rights under Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), see United States v. Amlani, 111 F.3d 705, 712, 716 (9th Cir.1997).
 
 
 6
 * Pangelinan argues that because the trial court denied him access to both the Hearing and the transcript of the Hearing, he lacked the necessary information to impeach McIntosh's credibility, and his counsel could not adequately prepare a cross-examination of Mcintosh. Although there are many troubling aspects to the procedures employed, we ultimately conclude that any error the district court committed was harmless in the context of the trial.
 
 
 7
 A careful comparison of McIntosh's testimony during the Hearing and at trial shows that the information Pangelinan sought from the Hearing--McIntosh's testimony about Pangelinan's activities and the basis of the court's decision to reduce McIntosh's sentence--would have been cumulative evidence impeaching McIntosh's credibility. See Evans v. Lewis, 855 F.2d 631, 633-34 (9th Cir.1988) (finding that evidence of precise nature of witness's previous "deals" to give testimony was cumulative evidence impeaching witness's credibility, since witness had already testified that he had special incentive to avoid prison and his testimony in instant case would enable him to achieve this goal). Indeed, all of the relevant information which could have been gleaned from the Hearing was the subject of both the direct and cross-examination of Mcintosh. Thus, McIntosh's trial testimony rendered superfluous any evidence from the Hearing and the cross-examination was effective, as it gave the jury "sufficient information to appraise the bias and motives" that underlay McIntosh's testimony. See Skinner v. Cardwell, 564 F.2d 1381, 1389 (9th Cir.1977). Accordingly, any error in failing to provide the information was harmless.
 
 B
 
 8
 Pangelinan had the constitutional right "to be present at every stage of the trial where his absence might frustrate the fairness of the proceedings." Sturgis v. Goldsmith, 796 F.2d 1103, 1108 (9th Cir.1986). Assuming without deciding that the trial court's decision resulted in constitutional error, we subject this error to harmless error analysis, as "an error in the trial process itself," rather than a "structural defect affecting the framework within which the trial proceed[ed]" or "[t]he entire conduct of the trial from beginning to end," Arizona v. Fulminante, 499 U.S. 279, 309, 310, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1990). Unlike such structural errors as the deprivation of the right to counsel, the denial of the right to an impartial judge, or the violation of the right to a public trial, see id. at 309-10, Pangelinan's exclusion from the Hearing and his lack of access to the record of the Hearing did not invalidate his entire trial. The purpose of the Hearing was not to explore McIntosh's awareness of Pangelinan's culpability in the murder and robbery of Datuin, but to determine the merits of McIntosh's motion for a sentence reduction and to ascertain his basis for violating his plea agreement in a separate case. Thus, Pangelinan would have acted merely as an observer during the Hearing, even if the trial court had allowed him to be present. See Rice v. Wood, 77 F.3d 1138, 1141 (9th Cir.) (en banc) (determining that defendant's absence when jury announced his death sentence was not structural error, as defendant "had no active role to play; he was there only to hear the jury announce its decision"), cert. denied, --- U.S. ----, 117 S.Ct. 191, 136 L.Ed.2d 129 (1996). Indeed, as we observed in Rice, see Rice, 77 F.3d at 1142-44, the sheer importance of a right and the pervasive impact of its violation upon a defendant's trial have not prevented the United States Supreme Court from applying harmless-error analysis to such significant constitutional errors as the admission of a coerced confession fully inculpating the defendant in the crime charged, see Fulminante, 499 U.S. at 310, and the prosecution's comment on the defendant's failure to testify at trial, resulting in a violation of the defendant's right against self-incrimination, see United States v. Hasting, 461 U.S. 499, 508-09, 103 S.Ct. 1974, 76 L.Ed.2d 96 (1983).
 
 
 9
 We must also note that Pangelinan's counsel was present at the initiation of the Hearing, and that there was no specific order barring his presence. Rather, Pangelinan's counsel apparently concluded on his own that his presence would place him in an awkward position with his client and chose to leave the proceedings. Absent a court order barring him from the Hearing, it is difficult to find reversible error.
 
 
 10
 Thus, under harmless-error analysis, the trial court's decision, even if constitutionally defective, does not compel the reversal of Pangelinan's conviction. As the transcript of the Hearing reveals, any such constitutional error was harmless beyond a reasonable doubt. See Hasting, 461 U.S. at 508-12.
 
 C
 
 11
 In his third claim of error purportedly arising from the trial court's decision to exclude him from the Hearing and to deny him access to the transcript of the Hearing, Pangelinan argues that the court violated his due process right to a fair trial. Because the gravamen of Pangelinan's argument is that the trial court prevented him from seeing the evidence that explained McIntosh's sudden willingness to testify against him, we interpret Pangelinan's claim as asserting a violation of his right to review material exculpatory evidence under Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). As such, his claim is without merit. Although McIntosh's testimony about his safety concerns at DOC was arguably "favorable" to Pangelinan, see id. at 87, because it demonstrated McIntosh's motivation to lie, Pangelinan has not established, nor can he establish, a reasonable probability that the result of his trial would have been different, had this evidence been disclosed to the defense. United States v. Bagley, 473 U.S. 667, 682, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985). As we have already explained, this evidence was entirely superfluous in the face of McIntosh's trial testimony concerning the same matters. Given the entire context of the trial and the Hearing, Pangelinan received "a trial resulting in a verdict worthy of confidence." Kyles v. Whitley, 514 U.S. 419, 434, 115 S.Ct. 1555, 131 L.Ed.2d 490 (1995). Hence, no Brady error arose from the trial court's decision.
 
 IV.
 
 12
 The trial court did not impermissibly interfere with Pangelinan's Sixth Amendment right to counsel by prohibiting his attorney from arguing the issue that the Government never requested McIntosh to take a polygraph examination. While the United States Supreme Court has regarded the complete denial of the defendant's opportunity to make a closing summation as a Sixth Amendment violation, see Herring v. New York, 422 U.S. 853, 858-59, 860, 95 S.Ct. 2550, 45 L.Ed.2d 593 (1975), Pangelinan's attorney was in not prevented from making an extensive and wide-ranging closing argument. Rather, the trial court properly exercised its discretion to exclude an argument from Pangelinan's summation that would have "stray[ed] unduly from the mark"--namely, impeachment of McIntosh's credibility--by speculating about the Government's failure to require a polygraph examination, a line of questioning that had already been forcibly halted during the trial by the parties' joint stipulation. See Herring, 422 U.S. at 862. This stipulation, McIntosh's testimony, and Mclntosh's plea agreement itself, which had been admitted into evidence, were adequate to allow the jury to draw conclusions about McIntosh's credibility.
 
 V.
 
 13
 Reviewed de novo, see United States v. Hill, 953 F.2d 452, 455 (9th Cir.1991), the trial court's denial of Pangelinan's motion for acquittal of hindering Angoco's apprehension or prosecution did not violate Pangelinan's Fifth Amendment privilege against self-incrimination. It was unnecessary for Pangelinan to incriminate himself to avoid the hindering charge under Guam law, see 9 Guam Code Ann. § 55.15 (1996). Unlike a comparable conviction for misprision of a felony that this court previously reversed in United States v. King, 402 F.2d 694, 697 (9th Cir.1968), Pangelinan's conviction was not founded upon his failure to inform the police about the scheme to kill and rob Datuin, but upon his affirmative concealment of the murder weapon and destruction of physical evidence that could have aided in Angoco's discovery, apprehension, or conviction. Pangelinan could have simultaneously avoided the hindering charge and avoided incriminating himself by simply not cleaning and concealing the murder weapon. Hence, his conviction for hindering must stand.
 
 VI.
 
 14
 We review the trial court's ruling on Pangelinan's motion for acquittal de novo, see United States v. Clayton, 108 F.3d 1114, 1116 (9th Cir.), cert. denied, --- U.S. ----, 118 S.Ct. 233, 139 L.Ed.2d 165 (1997). We review the evidence of Pangelinan's possession of methamphetamine in the light most favorable to the prosecution to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt, see United States v. Iriarte-Ortega, 113 F.3d 1022, 1024 n. 2 (9th Cir.), amended on denial of reh'g, 127 F.3d 1200 (9th Cir.1997), cert. denied, No. 97-7783, 1998 WL 54127 (U.S. Mar.9, 1998). The record shows that several witnesses testified that Pangelinan had provided them with methamphetamine, that they had seen Pangelinan with methamphetamine, and that Pangelinan had methamphetamine paraphernalia in his room. Viewed in the light most favorable to the Government, this evidence is sufficient for the jury to find the essential elements of possession beyond a reasonable doubt. Moreover, since the trial court has already entered a judgment of conviction against Pangelinan for possession, we may simply affirm that judgment without taking the additional measure of directing the court to enter a judgment. Cf. United States v. Dinkane, 17 F.3d 1192, 1198 (9th Cir.1994).
 
 VII.
 
 15
 The trial court properly denied Pangelinan's motion for acquittal of the special allegation of possession or use of a deadly weapon in the commission of a felony. Guam law mandates that "[w]hoever unlawfully possesses or uses a deadly weapon in the commission of a felony punishable under the laws of Guam shall, in addition to the punishment imposed for the commission of such felony, be imprisoned for a term of not less than five (5) years nor more than twenty-five (25) years." 9 Guam Code Ann. § 80.37 (1996). The jury heard sufficient evidence to find beyond a reasonable doubt that Pangelinan's conduct fit squarely within section 80.37: as Pangelinan himself concedes and witnesses' testimony bears out, Pangelinan supplied the gun to Angoco to kill Datuin. Thus, Pangelinan possessed the gun during the commission of a felony--namely, inducing or aiding Angoco to murder Datuin. See Guam v. Iglesias, 839 F.2d 628, 629 (9th Cir.1988) (finding that section 80.37 "contains no exceptions and applies to all felonies"). Accordingly, we uphold Pangelinan's sentence enhancement.
 
 
 16
 AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3